2000 ND 47

**Debra A. MELLUM, Plaintiff .
and Appellee,**

v.

**John E. MELLUM, Defendant
and Appellant.**

Nos. 990174, 990205.

Supreme Court of North Dakota.

March 21, 2000.

William E. McKechnie of William E. McKechnie & Associates, P.C., Grand Forks, for defendant and appellant.

Jay H. Fiedler of Pearson Christensen, Grand Forks, for plaintiff and appellee.

KAPSNER, Justice.

[¶ 1] John Mellum appealed from an order of contempt requiring him to pay $4,500 and from a divorce judgment dividing the parties' property. We hold the trial court did not abuse its discretion in issuing the order of contempt and did not clearly err in dividing the property. We therefore affirm.

I

[¶ 2] Debra and John Mellum married in 1972. A few years later, John began a construction business and Debra acquired a degree in education. During the marriage, John worked for the construction business and built several rental properties. Debra raised their four children and sometimes assisted with the construction business. She also worked in recent years as a paraprofessional for the public school district.

[¶ 3] Problems arose during the marriage. John had two extramarital affairs. Both parties committed some physical and emotional abuse. Around 1990, the parties saw a marriage counselor. John, however, terminated the counseling.

[¶ 4] In 1997, John began working with Jennifer Owens. Debra thought John and Owens were having an affair and requested John stop working with Owens. John refused, and Debra asked him to move out. John then moved in with Owens. Debra sought a divorce.

[¶ 5] An interim order was entered in September 1998. The order provided Debra would use income from the parties'

rental properties to pay all bills related to those properties. It also indicated Debra and John each would be responsible for personal expenses. John unsuccessfully sought to amend the interim order.

[¶ 6] In early 1999, John intercepted rent checks from tenants at the parties' rental properties. He collected approximately $8,700 and used approximately $4,500 of those funds to pay expenses unrelated to the parties' rental properties. Upon discovering John's actions, Debra moved for an order of contempt. John asserted he had used the money from the rent checks to "pay bills for the rental properties, as well as other regularly-incurred business expenses." The trial court determined John intentionally disobeyed the interim order by intercepting the rent checks and entered an order of contempt requiring John to pay $4,500 to Debra in order to avoid further sanctions. John appealed the order.

[¶ 7] After trial on the divorce action, the trial court indicated "[t]he main contention here is how to value and divide the parties['] extensive property" and acknowledged the *Ruff–Fischer* guidelines as controlling. The trial court found Debra maintained the household and served as primary caregiver to the couple's four children; Debra assisted throughout the marriage in the construction business; although Debra acquired an education degree shortly after the marriage, she did not work outside the home or the construction business until 1983 and she never acquired a full-time teaching position; John had extramarital affairs in 1981 and 1990; John terminated marital counseling sessions; John acknowledged a relationship with Owens and moved in with her immediately after Debra asked him to move out; using the equipment of the construction business, John helped Owens with some of her construction projects and John and Owens were building a home

which they expect to sell for as much as $400,000.

[¶ 8] The trial court granted a divorce and distributed property valued at approximately $742,000, including five rental properties, to Debra. John received property valued at approximately $407,000, including two rental properties. Considering Debra's wages from paraprofessional work during the school year, a minimum wage during the summer and income from the rental properties awarded to her, the trial court projected her future annual gross income would be $51,600. Considering John's potential income as a full-time construction superintendent[1] and income from the rental properties awarded to him, the trial court projected his future annual gross income would be $53,160. The trial court indicated "[w]ith this allocation, [it] will not award Debra spousal support." Judgment was entered on June 17, 1999, and John appealed. John's appeal of the order of contempt was joined with his appeal of the divorce judgment.

## II

[¶ 9] John contends several of the trial court's findings are erroneous. A trial court's findings of fact will not be reversed unless they are clearly erroneous. *Fox v. Fox*, 1999 ND 68, ¶ 7, 592 N.W.2d 541. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 10] John asserts the trial court erred in intimating the existence of a sexual relationship between John and Owens prior to John and Debra's separation. The trial court, however, did not find John and Owens were having an affair prior to the separation. Rather, the trial court merely found a relationship existed between John

1. Because John testified he was "mostly retired" at age 45, income was imputed to John for child support purposes pursuant to N.D. Admin. Code § 75–02–04.1–07.

and Owens. John admitted that after being confronted by Debra just prior to their separation, he told Debra "[Owens] is in my life." John testified he meant Owens was in his life because "everybody that I meet is in my life." Both John's testimony and Owens' testimony establish they had a business relationship prior to John and Debra's separation. The trial court thus did not clearly err in finding a relationship between John and Owens existed prior to John and Debra's separation.

[¶ 11] John next asserts the trial court erred in making findings that detailed Debra's contributions to the parties' construction business but did not note his own contributions.[2] However, the trial court did recognize John's contributions to the construction business. The trial court noted John "started his own construction company" and "was primarily responsible for the construction" of the parties' home. The trial court referred to Debra's actions involving the construction business as "help[ing] John" or "assist[ing] John." Both parties testified Debra performed various tasks at construction job sites during the marriage. We accordingly conclude the trial court did not clearly err in noting Debra's contributions to the construction business or by ignoring John's contributions to the construction business.

[¶ 12] John alleges the trial court erred in intimating he was unwilling to save the marriage. John emphasizes the trial court found he was unfaithful during the marriage, and he agreed "to play along" with counseling but later terminated counseling sessions. John admitted he had two affairs during the marriage. He also testified he disagreed with the marriage counselor's approach but decided to "play along with this counseling." Both parties agreed John later terminated the counseling sessions. Because the trial court's findings are consistent with the evidence, they are not clearly erroneous.

[¶ 13] John finally argues the trial court erred in determining Debra's income because it did not impute income to Debra based on a teacher's salary.[3] The trial court instead used Debra's wages as a paraprofessional for the school term and imputed a minimum wage for the summer months. Debra's ability to obtain a teaching position has decreased because, shortly after acquiring her degree, she opted to raise the parties' four children. Both John and Debra testified they agreed Debra would raise their children and John would work outside the home. During the approximately twenty-seven year marriage, Debra thus never acquired a teaching license and never pursued a full-time teaching career. In light of this evidence, we conclude the trial court did not clearly err by not using a teacher's salary to consider

2. We note "[f]inancial contributions are but one factor to consider" in distributing marital property and "a party's other, non-economic contributions to a marriage must be given equal consideration." *Moilan v. Moilan,* 1999 ND 103, ¶ 22, 598 N.W.2d 81. Although the trial court here noted both parties' contributions to the construction business, it did not solely rely on those contributions in distributing the property.

3. John also points out the trial court did not include income from one of the rental properties awarded to Debra. According to exhibits, the net income from the excluded rental property was approximately $7,500. John's projected income was over $1,500 more than Debra's projected income. Despite John's experience, the trial court used the "average

starting" wage for a construction superintendent, as calculated by Job Service in Grand Forks, to project his income. The average starting wage was more than two dollars less per hour than the "average high" wage and more than one dollar less per hour than the average wage. The marital estate was valued at over one million dollars. Under such circumstances, we conclude the trial court's computation of Debra's income was harmless. *See Sateren v. Sateren,* 488 N.W.2d 631, 634 (N.D.1992) (considering the value of the total marital estate in determining whether the trial court's calculation error was harmless); *see also Fox v. Fox,* 1999 ND 68, ¶ 11, 592 N.W.2d 541 (concluding the trial court's wrongful inclusion of over one million dollars in disability payments was harmful error).

Debra's future income potential to support herself.

## III

[¶ 14] John argues the trial court clearly erred in distributing approximately 65% of the property to Debra and approximately 35% of the property to him.[4] A court must make such equitable distribution of divorcing parties' property as may seem just and proper. N.D.C.C. § 14–05–24. "There is no set formula for dividing a marital estate, but the trial court must equitably divide the property based upon the circumstances of the particular case." *Nelson v. Nelson*, 1998 ND 176, ¶ 6, 584 N.W.2d 527. "A property distribution need not be equal to be equitable, but a substantial disparity must be explained." *Fox v. Fox*, 1999 ND 68, ¶ 7, 592 N.W.2d 541. The trial court's determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561.

[¶ 15] In distributing marital property, the trial court must use the *Ruff–Fischer* guidelines [5] which indicate the following factors should be considered:

the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Id.* at ¶ 9.

[¶ 16] John contends the trial court failed to explain its rationale for the unequal distribution. There must be some "indication of the rationale of the trial court in distributing the property." *Linrud v. Linrud*, 552 N.W.2d 342, 346 (N.D. 1996) (citation omitted). Remand for clarification of missing or conclusory findings is appropriate "if we cannot discern the rationale for the trial court's decision through inference or deduction." *Emter v. Emter*, 1999 ND 102, ¶ 8, 595 N.W.2d 16; *see also Blowers v. Blowers*, 377 N.W.2d 127, 129 (N.D.1985) (noting "[a] property division will not be set aside on appeal because of the trial court's failure to show the basis for it if that basis is reasonably discernible by deduction or inference").

[¶ 17] Here, the trial court's findings support and explain the unequal distribution. We initially note the trial court acknowledged it was bound by the *Ruff–Fischer* guidelines and expressly listed them. Three factors support our conclusion the trial court has adequately explained its distribution. First, the trial court's findings highlight John's bad conduct during the marriage which is relevant because "the conduct of each [party] during the marriage" is a consideration under the *Ruff–Fischer* guidelines. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 9, 585 N.W.2d 561. The trial court found John was unfaithful; John "played along" with marriage counseling for a while and ultimately terminated the counseling; and for little or no compensation, John used the resources of the construction business to build an expensive home for him and Owens and to assist Owens with her own construction

---

**4.** Although at oral argument John's counsel alleged the distribution was even more unequal, these are the percentages John presented in his brief. At oral argument, John's counsel acknowledged the value of John's interest in or claim on the proceeds of the house constructed with Owens was not included in the property distribution. Both parties agree there was a substantial disparity in the distribution.

**5.** The *Ruff–Fischer* guidelines were derived from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

projects.[6] The trial court thus attributed both economic and noneconomic misconduct to John.

[¶ 18] Second, the trial court's findings reflect John's greater earning ability, an important consideration under the *Ruff–Fischer* guidelines. *Id.* Debra and John agreed Debra would raise their children and John would work outside the home. Throughout much of the marriage, John thus had the opportunity to become skilled and established in the construction industry, but Debra gave up her opportunity to develop her skills as a teacher. The trial court accordingly found Debra has never been employed as a full-time teacher and has never acquired a teaching license. Although John "considers himself to be mostly retired," he is healthy and physically fit. The trial court properly imputed a full-time salary for a construction superintendent for purposes of projecting his income potential. *See Wheeler v. Wheeler,* 548 N.W.2d 27, 31 (N.D.1996) (providing "a support obligor's decision to retire constitutes a voluntary reduction in income which does not warrant a modification of spousal support"). The trial court determined its distribution of property together with anticipated income from other sources would cause the parties' incomes to be nearly equal.

[¶ 19] Finally, the trial court properly decided to award a greater amount of property to Debra in lieu of spousal support. "[P]roperty division and spousal support are interrelated, and often must be considered together." *Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 16, 574 N.W.2d 790. A difference in earning power is an important factor in both spousal support and property division determinations. *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 622 (N.D.1994). An award of greater property in lieu of spousal support where there are sufficient income-producing assets to achieve self-sufficiency also helps disentangle the parties' financial affairs, a proper factor for the trial court to consider. *Fox v. Fox,* 1999 ND 68, ¶ 17, 592 N.W.2d 541.

[¶ 20] Because we can discern the trial court's justifiable rationale for the distribution, we conclude the trial court's distribution was not erroneous.

### IV

[¶ 21] John contends the trial court abused its discretion in citing him for civil contempt and ordering him to pay $4,500. Civil contempt requires a willful and inexcusable intent to violate a court order. *Flattum–Riemers v. Flattum–Riemers,* 1999 ND 146, ¶ 5, 598 N.W.2d 499; *see also* N.D.C.C. § 27–10–01.1(1)(c) (providing " '[c]ontempt of court' means[ ][i]ntentional disobedience, resistance, or obstruction of the authority, process, or order of a court or other officer including a referee or magistrate"). A finding of contempt will not be reversed unless there is a clear abuse of discretion. An abuse of discretion exists when the trial court acts in an arbitrary, unreasonable, or unconscionable manner or when it misinterprets or misapplies the law. *Flattum–Riemers,* at ¶ 5.

[¶ 22] Here, evidence supports a finding John willfully and inexcusably intended to violate the trial court's interim order. John asserts Debra herself violated the interim order by mismanaging the rental properties and failing to pay debts. John accordingly contends he did not intend "to disparage the court's authority" but rather "sought to protect his investment." However, he concedes he failed to follow the interim order by intercepting the rent checks. If John desired to alter the arrangement provided for in the interim order, he should have moved the trial court for relief from the order and presented evidence to support the motion. *See State v. Zahn,* 1997 ND 65, ¶¶ 13, 21, 562 N.W.2d 737 (citation omitted) (recognizing the "necessity of maintaining the

---

**6.** John asserted he would receive $7,200 from Owens for his work on the home.

dignity of and respect toward the courts" and upholding a contempt order issued where the contemner disobeyed the court's order and "impaired the respect due the court").[7] Moreover, the amount of money the trial court ordered John to pay represented the portion of the intercepted rents that John allocated to non-rental property expenses. John was only ordered to reimburse Debra for money she would not have allocated to rental property bills. We thus hold the trial court did not abuse its discretion in issuing the order of contempt.

## V

[¶ 23] Because the trial court did not abuse its discretion in issuing the order of contempt, did not clearly err in making its findings, and did not clearly err in distributing the parties' property, we affirm the trial court's order and judgment.

[¶ 24]GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, (dissenting).

[¶ 25] In affirming one of the most disparate property distributions we have seen, the majority deviates from fundamental principals of our domestic relations jurisprudence. I therefore respectfully dissent.

[¶ 26] As we have said so many times, "A property distribution need not be equal to be equitable, but a substantial disparity must be explained." *Fox v. Fox*, 1999 ND 68, ¶ 7, 592 N.W.2d 541 (citing *Fisher v. Fisher*, 1997 ND 176, ¶ 15, 568 N.W.2d 728). Here, the trial court awarded the property sixty-five percent to thirty-five percent in favor of Debra Mellum, but offered no explanation of its allocation.

[¶ 27] The majority offers its "brief" in favor of Debra Mellum and speculates about what must have been the trial court's rationale. In doing so, it inconsistently picks and chooses among the facts recited by the trial court and "finds" facts never found by the trial court.

[¶ 28] Contrary to the majority's assertion, the trial court never found or said John Mellum engaged in economic misconduct or in noneconomic misconduct. The trial court noted extramarital sexual conduct by both parties, and domestic violence by both. The trial court did not say, find, or conclude that failure to wholeheartedly participate in marital counseling is noneconomic misconduct, nor does the majority cite any authority for such a premise.

[¶ 29] " 'When neither the findings nor the transcripts of the proceedings disclose the basis for the court's conclusions of law and the decision, we cannot properly perform our appellate court function.' " *Emter v. Emter*, 1999 ND 102, ¶ 8, 595 N.W.2d 16 (quoting *Pankow v. Pankow*, 371 N.W.2d 153, 157 (N.D.1985)).

We must have some "indication of the rationale of the trial court in distributing the property." *Tuff v. Tuff*, 333 N.W.2d 421, 424 (N.D.1983). The "findings of fact are adequate when they provide us with a clear understanding of the basis of the trial court's decision." *Tuff.* When justification for a substantial disparity is absent from a district court's division, we hesitate to infer an explanation because of "the fact-dependent nature of equitable property distributions." *Gaulrapp v. Gaulrapp*, 510 N.W.2d 620, 622 (N.D.1994).

. . . The district court did not adequately explain its reasoning for the substantial disparity in this case.

We reverse and remand for the district court to adequately explain the substantial disparity in the division or "to

---

7. The trial court's order from which John appeals was issued for civil contempt and was

remedial in nature.

change the property division to make it equitable." *Gaulrapp; Schatke [v. Schatke,* 520 N.W.2d .833,] 838 [ (N.D. 1994) ].

*Linrud v. Linrud,* 552 N.W.2d 342, 346 (N.D.1996).

[¶ 30] I would reverse and remand for the district court to make adequate findings, and to adequately explain its distribution or to make a more equitable one.

[¶ 31] Dale V. Sandstrom