Filed 4/30/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 70

Timothy Dronen, Plaintiff and Appellant

v.

Nancy Dronen, Defendant and Appellee

No. 20080110

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED, REVERSED, AND REMANDED.

Opinion of the Court by Maring, Justice.

Brenda A. Neubauer of Neubauer & Oster, P.O. Box 1015, Bismarck, N.D.  58502-1015, for plaintiff and appellant.

Susanne M. Schweigert, Smith Bakke Porsborg & Schweigert, P.O. Box 460,

Bismarck, N.D. 58502-0460, for defendant and appellee.

Dronen v. Dronen

No. 20080110

Maring, Justice.

[¶1] Timothy Dronen appeals from a district court amended judgment challenging its custody award, property valuation and distribution, and attorney’s fees award.  We affirm, concluding the district court did not err in awarding custody of the youngest child to Nancy Dronen and declining to award Timothy Dronen spousal support.  We further affirm the district court’s valuing the parties’ assets and debts and distributing half of the marital estate, with the exception that we reverse the district court’s valuation of Nancy Dronen’s Federal Employee Retirement System (“FERS”) annuity and remand for findings consistent with this opinion.  We also remand for the district court to make further findings on its award of attorney’s fees to Nancy Dronen.

I

[¶2] Timothy Dronen and Nancy Dronen were married in 1990.  They have three minor children.  The parties separated on September 13, 2006, and Timothy Dronen filed for divorce in November 2006.  Before the separation, the family resided on Timothy Dronen’s family’s farm.  Timothy Dronen’s parents also lived on the farmstead.  Timothy Dronen acquired Burleigh County farmland after his grandfather’s death in 1987, when he began paying his grandmother one-half the crop income and the taxes on the land.  This agreement was reduced to writing in 1989 and a contract for deed was executed in that year.  Timothy Dronen has always worked as a farmer.  Nancy Dronen has worked full time for the Farm Service Agency since 1988.

[¶3] Nancy Dronen and the youngest child moved into an apartment in Steele when the couple separated; the two older children remained living on the family farm with Timothy Dronen.  This informal arrangement was maintained by the district court’s interim order awarding Timothy Dronen temporary physical custody of the two older children and awarding Nancy Dronen temporary physical custody of the youngest child.  

[¶4] After the parties separated and approximately two weeks before Timothy Dronen filed for divorce, Timothy Dronen reported Nancy Dronen to Burleigh County Social Services.  Timothy Dronen alleged Nancy Dronen had been physically and verbally abusive to the eldest child.  Social Services investigated the allegation and did not require any services for the parties, but recommended counseling for all family members.  Timothy Dronen moved to appoint a custody investigator.  The court granted his motion. 

[¶5] The district court held a four-day trial.  Following post-trial briefing by both parties, the court issued a memorandum opinion awarding Nancy Dronen custody of the youngest child and Timothy Dronen custody of the two older children.  The district court found the parties’ net estate was $885,194.82.  The court awarded Nancy Dronen a Thrift Savings and FERS Annuity acquired through her employment.  The court awarded Timothy Dronen the farm real estate, farm machinery and equipment, and the farm debt.  Timothy Dronen was required to pay Nancy Dronen a cash settlement of $332,842.90 over a ten-year period.  The district court also ordered Timothy Dronen to pay $10,000 of Nancy Dronen’s attorney’s fees, because it found he had inflated his debt.  Timothy Dronen appeals the custody award of the youngest child, the property valuation and distribution, and the award of attorney’s fees to Nancy Dronen.

II 

Custody

[¶6] Timothy Dronen argues the district court’s award of custody of the youngest child to Nancy Dronen was not in the child’s best interest.  He argues the custody determination was clearly erroneous because it split custody of the parties’ minor children and the district court erred in its findings on several best interest factors.

[¶7] We outlined our review of child custody decisions in 
Jelsing v. Peterson
, 2007 ND 41, ¶ 11, 729 N.W.2d 157 (citations omitted):

We exercise a limited review of child custody awards. A district court's decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.

“[T]he district court’s choice for custody between two fit parents is a difficult one, and this Court will not retry the case or substitute its judgment for that of the district court when its determination is supported by the evidence.  The complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous.”  
Koble v. Koble
, 2008 ND 11,   6, 743 N.W.2d 797 (citations omitted).

[¶8] The district court must apply the factors listed in N.D.C.C.   14-09-06.2(1) when making an initial custody determination.  
Koble
, at   7.  Here, the district court considered the best interest factors under N.D.C.C.   14-09-06.2(1) and made a separate finding on each factor.  In awarding Nancy Dronen custody of the youngest child, the district court found factors (a) the love, affection, and emotional ties between the parents and child; (b) the parents’ capacity and disposition to give the child love, affection, and guidance, and to continue the child’s education; (h) the child’s home, school, and community record; (i) the child’s reasonable preference; and (m) the other relevant factors in that Timothy Dronen had made disparaging remarks about Nancy Dronen in the community, favored Nancy Dronen.  The district court found factor (d) the length of time the child has lived in a stable satisfactory environment and the desirability of maintaining that continuity; and (e) the permanence, as a family unit, of the existing or proposed custodial home, favored Timothy Dronen.  The district court found the remaining factors favored neither party.

[¶9] Timothy Dronen argues the district court erred in its findings on factors (a) the love, affection, and emotional ties between the parents and child, (b) the parents’ capacity and disposition to give the child love, affection, and guidance, and to continue the child’s education, (f) the parents’ moral fitness, (h) the home, school, and community record of the child, (i) the child’s reasonable preference, (j) evidence of domestic violence, and (m) other relevant factors.

A

[¶10] Timothy Dronen argues the district court erred in finding factor (a), the love, affection, and emotional ties between the parents and child, favored Nancy Dronen.  According to Timothy Dronen, the factor was equal to both parties.  Timothy Dronen asserts the court should have focused on the parents’ relationships with the child before the parties separated.  In determining factor (a) favored Nancy Dronen, the district court found that while both parents love the child, the child’s emotional ties seem to be stronger with Nancy Dronen.  In support of its finding, the court explained, “[the child] wanted to go and live with his mother when she left the marital home.”  The court’s findings do not indicate that it only considered the child’s relationships with his parents since the parties separated.  Rather, the record reveals that the district court heard the testimony of the witnesses, reviewed the custody investigator’s report, and concluded the child had a greater emotional attachment to Nancy Dronen at the time of trial and before the parties separated.  We give deference to the district court’s findings and will not reweigh the credibility of the witnesses on appeal.  
See
 
Mayo v. Mayo
, 2000 ND 204,   24, 619 N.W.2d 631.  The district court’s finding that factor (a) favored Nancy Dronen is not clearly erroneous. 

B

[¶11] Timothy Dronen argues the district court erred in finding factor (b), the parents’ capacity and disposition to give the child love, affection, and guidance, and to continue the child’s education, favored Nancy Dronen.  According to Timothy Dronen, the youngest child had not turned in thirteen school assignments while in Nancy Dronen’s care; Nancy Dronen only began arranging tutoring for the youngest child one month before the trial; and, unlike Timothy Dronen, Nancy Dronen did not state she placed a priority on her children’s educations and wanted them to succeed.  While acknowledging that both parents are concerned about the child’s education and have the capacity and disposition to give the child love, affection, and guidance, the district court found this factor favored Nancy Dronen.  The district court heard the testimony of both parents, the child’s daycare provider, and the child’s teacher.  Each of these witnesses testified that the child had always struggled in school and needed additional assistance.  The daycare provider testified that since the separation, the child was happy, well-adjusted, and his self-esteem was much higher.  The child’s teacher testified that Nancy Dronen had arranged tutoring for the child.  After hearing the witnesses’ testimony, the district court found that this factor favored Nancy Dronen because she had established an after-school tutor for the child.  The district court’s finding on factor (b) is based on the testimony of several witnesses.  We give great deference to the court’s observation and assessment of witnesses’ credibility.  
See
 
Hanisch v. Osvold
, 2008 ND 214,   11, 758 N.W.2d 421.  The district court’s finding factor (b) favored Nancy Dronen is not clearly erroneous.  

C

[¶12] Timothy Dronen argues the district court erred in finding factor (f), the moral fitness of the parties, favored neither party.  Timothy Dronen argues the court should have found this factor favored him because Nancy Dronen has engaged in inappropriate conduct with another man while still married to him, exposed the youngest child to this relationship, swore at the children, and told the children they are going to hell.  The district court found, “Tim believes Nancy was having an affair prior to their separation.  Nancy denies she was having an affair.  Tim and Nancy are involved in relationships now.”  The district court was in the best position to consider the parties’ testimony on this issue.  The court heard conflicting testimony concerning the parents’ relationships with other adults and with the children.  We defer to the district court’s opportunity to observe and assess the credibility of witnesses.  
Mayo
, 2000 ND 204,   24, 619 N.W.2d 631.  The district court’s finding that factor (f) favored neither party is not clearly erroneous.

D

[¶13] Timothy Dronen argues the district court erred in finding factor (h), the child’s home, school, and community record, favored Nancy Dronen.  According to Timothy Dronen, the youngest child lived on the farm before the separation and it was a satisfactory environment, the child’s teachers testified that his demeanor or behavior was the same after the child moved in with Nancy Dronen as before the separation, and the child was even more involved in activities when he lived on the farm with both parents.  The district court found the child likes living in town with his mother, he receives academic assistance from the tutoring his mother established, and he has been more involved in activities since moving to town with Nancy Dronen.  The court reviewed the custody investigator’s report and heard the testimony of Nancy Dronen, Timothy Dronen, the child’s teachers, and the child custody investigator.  The district court’s findings of fact are supported by evidence in the record.  The court did not err in finding factor (h) favored Nancy Dronen.

E

[¶14] Timothy Dronen argues the district court erred in finding factor (i), the child’s reasonable preference, favored Nancy Dronen.  According to Timothy Dronen, the child was not of an age, intelligence, or understanding to express a preference.  Timothy Dronen contends the child’s perception has been altered by living with Nancy Dronen, and the district court should have examined the child on its own, rather than relying on the custody investigator.  The district court acknowledged that the child was only ten years of age and may not be able to express a mature preference for either parent.  However, the district court found the child’s reasons for wanting to live with his mother were thoroughly expressed by the custody investigator.  While more weight should be given to custodial preferences of a child as the child matures, 
Mertz v. Mertz
, 439 N.W.2d 94, 96 n.2 (N.D. 1989), we have held that children who were eight and ten years of age at the time of the divorce could be capable of intelligently choosing between parents for purposes of custody.  
DesLauriers v. DesLauriers
, 2002 ND 66, ¶ 13, 642 N.W.2d 892.  Furthermore, it is within the district court’s discretion to determine the weight to be given a custody investigator’s recommendations.  
Id.
 at ¶ 11.  The district court properly considered the reasons given by the child for wanting to live with his mother, the custody investigator’s recommendations, and the child’s age in determining how much weight to give the child’s preference.  The district court did not err in finding factor (i) favored Nancy Dronen.

F

[¶15] Timothy Dronen argues the district court erred in finding factor (j), evidence of domestic violence, favored neither party.  According to Timothy Dronen, Nancy Dronen committed a pattern of domestic violence against him and the children.  He contends the youngest child has been impacted by Nancy Dronen’s behavior, and the district court erred in reasoning that because there have been no discipline problems between Nancy Dronen and the youngest child, there should not be a problem.  Timothy Dronen asserts Nancy Dronen has not introduced evidence of rehabilitation.

[¶16] Section 14-09-06.2(1)(j), N.D.C.C., creates a rebuttable presumption against awarding custody of a child to a perpetrator of domestic violence.  

[T]he presumption against awarding custody to the perpetrator arises in three circumstances:  (1) there exists one incident of domestic violence which resulted in serious bodily injury; (2) there exists one incident of domestic violence which involved the use of a dangerous weapon; or (3) there exists a pattern of domestic violence within a reasonable time proximate to the proceeding. 

Selzler v. Selzler
, 2001 ND 138, ¶ 17, 631 N.W.2d 564 (citations omitted).  “[W]hen there is credible evidence of domestic violence, it is the predominate factor in custody decisions under N.D.C.C.   14-09-06.2(1).”  
Gietzen v. Gabel
, 2006 ND 153, ¶ 9, 718 N.W.2d 552.  “When a district court addresses whether evidence of domestic violence triggers the presumption under that statute, we require specific findings and conclusions regarding the presumption so we are not left guessing as to the court’s rationale regarding the application of the presumption.”  
Id.
  

[¶17] In this case, the district court made specific findings and conclusions regarding the presumption of domestic violence.  The court found Nancy Dronen and the two older children had a strained relationship.  The court found, “An incident between Nancy and [the oldest child] took place where Nancy held [the oldest child] down.  This incident happened more than a year before the trial.  There was no bodily injury.  Nancy felt [the oldest child] was out of control.”  The court concluded that none of the incidents between Nancy Dronen and the two older children constituted domestic violence, citing the lack of serious bodily injury, the use of a dangerous weapon, or a pattern of domestic violence.  The court also found there was no evidence of discipline problems between Nancy Dronen and the youngest child.  The court considered the allegations of domestic violence, but found the incidents did not constitute domestic violence.  This finding was not clearly erroneous. 

G

[¶18] Timothy Dronen argues the district court erred in finding factor (m), other relevant factors, favored Nancy Dronen.  According to Timothy Dronen, the issue of whether he had made disparaging remarks about Nancy Dronen in the community was in dispute.  Timothy Dronen contends the district court did not explain how this impacted its custody decision.  A district court may consider any relevant information not otherwise provided for as a factor under N.D.C.C.   14-09-06.2(m).  
DesLauriers v. DesLauriers
, 2002 ND 66, ¶ 17, 642 N.W.2d 892.  The manner in which the parties have acted throughout the divorce proceeding is a relevant factor that could affect the children’s best interests.  One of the children’s teachers testified she stopped communicating with Timothy Dronen because of the disparaging comments he made about Nancy Dronen.  The district court considered this testimony, and, as the trier of fact, it reasonably considered this to be a relevant factor in the best interest analysis.  This finding is not clearly erroneous.

 

H

[¶19] Timothy Dronen argues the district court erred in splitting custody of the three children.  He contends none of the circumstances that would lessen the negative effect of split custody were present in this case.  

[¶20] “As a general rule the courts do not look favorably upon separating siblings in custody cases.”  
BeauLac v. BeauLac
, 2002 ND 126, ¶ 16, 649 N.W.2d 210.   However, split custody is not prohibited.  
See
 
Schmidt v. Bakke
, 2005 ND 9, ¶ 22, 691 N.W.2d 239 (affirming a district court’s decision to allow split custody of the children upon a motion to relocate when one of the children stated his preference to live with the other parent, and no evidence was presented that the children spent a substantial amount of time together, or shared any activities or interests); 
BeauLac
, 2002 ND 126, ¶ 17, 649 N.W.2d 210 (concluding the district court did not err in splitting custody of the children when the children expressed their preferences to live with different parents, the court structured visitation so that both children spent alternating weekends together, and the children had adjusted to living with the respective parent); 
Loll v. Loll
, 1997 ND 51, ¶ 15, 561 N.W.2d 625 (concluding the district court did not err in splitting custody of twins because each child expressed a clear preference to live with the respective parent); 
Freed v. Freed
, 454 N.W.2d 516, 519-20 (N.D. 1990) (affirming a district court’s decision to split custody of the children when the parties’ residences were only a few miles apart, a liberal visitation agreement was established, a fairly large age difference between the children existed, and one of the children was close to the age of emancipation).  When deciding whether to split custody, courts have considered, among other factors, the interrelationship of the children, the children’s ages, the similarity of interests and activities of the children, whether the child previously resided with the custodial parent, the parents’ involvement in the child’s upbringing, the parents’ emotional stability, the parents’ previous lack of cooperation regarding visitation, the child’s preference, parental agreement providing for siblings to be together frequently, and the location of the parents’ residences.  Annotation, 
Child Custody: Separating Children by Custody Awards to Different Parents-Post-1975 Cases
, 67 A.L.R. 4th 354 (2009).  Here, the district court acknowledged that split custody was disfavored.  However, the court considered the community where the children reside, the visitation schedule, the benefits the youngest child would receive if he lived with his mother, and the comments Timothy Dronen made about Nancy Dronen.  The visitation schedule provides that the children be together Monday and Tuesday evenings at Timothy Dronen’s home and Wednesday and Thursday evenings at Nancy Dronen’s home.  Each parent received visitation with the children every other weekend and the judgment outlines a holiday and birthday schedule, whereby each parent has visitation with all three children.  Thus, although the district court did not place custody of all the children with one parent, the siblings will be together for much of the time.  Furthermore, the record indicates the youngest child preferred living with Nancy Dronen, while the older children preferred living with Timothy Dronen, the younger child did not share similar interests with the older children, and the younger child did not enjoy living on the farm as the older children did.  Under these circumstances, the district court did not err in splitting custody of the minor children.

III 

Property Division

[¶21] Timothy Dronen argues the district court (1) erroneously valued the parties’ assets and debts; (2) improperly excluded debt owed to his mother; (3) erred in its distribution of the property; (4) declined to award him spousal support; and (5) declined to award him a share of Nancy Dronen’s FERS annuity.

A 

[¶22] Timothy Dronen argues the district court erred by accepting Nancy Dronen’s information pertaining to the number and value of cattle the parties owned.  Timothy Dronen also asserts the district court undervalued the farm machinery and equipment.  Finally, Timothy Dronen contends the district court erroneously reduced the amount of debt owed to the bank. 

[¶23] A district court’s valuation of property is a finding of fact and will only be reversed on appeal if it is clearly erroneous.  
Lynnes v. Lynnes
, 2008 ND 71, ¶ 16, 747 N.W.2d 93.  “A district court’s valuation of property is presumed correct.”  
Id.
  We view the evidence presented in the light most favorable to the district court’s findings of fact.  
Id.
  “It is the province of the district court to judge the credibility of witnesses and the evidence they introduce.  When the district court’s valuation is within the range of evidence provided by the parties, the district court’s valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made.”  
Id.
 (citations omitted).  

[¶24] Timothy Dronen first argues the district court was clearly erroneous in accepting Nancy Dronen’s estimates on the number and value of cattle the parties owned because she used data that was no longer accurate.  Nancy Dronen and Timothy Dronen each introduced testimony and financial documents pertaining to the number and value of the parties’ livestock.  The district court adopted most of Nancy Dronen’s livestock valuations because it found her figures “more closely represent what the parties stated was correct on their Finpaks.”   The district court was in the best position to weigh the evidence and determine the credibility of the witnesses when valuing the parties’ financial assets.  
See
 
Davis v. Davis
, 458 N.W.2d 309, 317 (N.D. 1990).  The district court considered both parties’ evidence and valued the livestock within the range of evidence presented by the parties.  Thus, we conclude the district court did not clearly err in its valuation of the parties’ livestock.

[¶25] Likewise, the district court did not err in its valuation of the machinery and equipment.  Both parties presented expert testimony as to the value of the machinery and farm equipment.  Although the district court accepted Timothy Dronen’s expert’s opinion on the value of the real estate, it found Nancy Dronen’s expert’s opinion on the machinery and equipment more persuasive.  The district court found Nancy Dronen’s appraiser was a “very seasoned, well-qualified auctioneer and appraiser [whose] business involves buying and selling of farm machinery and equipment.”  The district court assessed the expert witnesses’ credibility and concluded Nancy Dronen’s expert was more persuasive as to the machinery and equipment.  Based on the court’s findings and the record, we are not left with a definite and firm conviction a mistake has been made regarding the machinery and equipment values. 

[¶26] Finally, Timothy Dronen argues the district court erred in valuing the debt owed to Northland Financial.  Timothy Dronen estimated the debt owed to Northland Financial was $274,000.  Nancy Dronen estimated the debt owed was $190,201.01.  In Nancy Dronen’s post-trial brief to the court, she explained that according to a September 18, 2007, Northland Financial account summary, the parties owed $254,086.75.  Nancy Dronen argued the banker testified that Timothy Dronen made two payments in October that totaled $11,433.  Thus, she argued, at the time of trial, the parties owed Northland Financial no more than $242,653.75.  The district court found the parties owed $242,653.75.  The district court was presented with conflicting evidence and “[a] choice between two permissible views of conflicting evidence is not clearly erroneous.”  
See
 
Barth v. Barth
, 1999 ND 91, ¶ 13, 593 N.W.2d 359.  We conclude the district court’s valuation of the debt owed to Northland Financial is not clearly erroneous.

B

[¶27] Timothy Dronen argues the district court erroneously excluded $166,000 in debt owed to his mother.  He contends he legitimately borrowed the money from his mother for litigation expenses, operating costs, and equipment purchases.  Timothy Dronen asserts the district court misapplied the law in treating this business debt as non-marital debt.

[¶28] In dividing a marital estate, the district court must determine the net marital worth by considering all
 
property and debt accumulated by the parties.  
Brandner v. Brandner
, 2005 ND 111, ¶ 10, 698 N.W.2d 259.  While a court must consider all debt, it does not have to find that all claimed debt is, in fact, marital debt.  The district court did not misapply the law in excluding a portion of the claimed debt from the marital estate.  The district court specifically found:

Tim has listed a $260,000.00 debt to his mother.  $200,000.00 for a machinery lease to buy agreement and $60,000.00 for operating and personal loans.  His own appraiser appraised the machinery and equipment at $74,000.  In contemplation of a divorce, the Court believes Tim inflated his debt to his mother in order to reduce the value of the net estate.  He will only be given credit for $74,000.00 for the machinery and equipment debt and $20,000.00 for the operating and personal loans.  Nancy apparently agrees that there is a $20,000.00 personal debt owed to Tim’s mother.  

[¶29] Timothy Dronen claimed he owed his mother $200,000 for a lease to buy agreement on six pieces of farm machinery.  The district court was presented with testimony from Timothy Dronen, his mother, Nancy Dronen, the parties’ banker, and the parties’ appraisers.  Timothy Dronen’s appraiser testified that intra-family equipment transfers are good for both family members and valued the six pieces of farm machinery subject to the lease to buy agreement at $74,000.   Furthermore, both Timothy Dronen and his mother testified that Timothy Dronen did not make his first payment to his mother for the loans, and Timothy Dronen and his mother presented conflicting testimony as to how they reached the $200,000 amount for the machinery lease to buy agreement.  Based on the record, the district court did not err in concluding Timothy Dronen inflated the debt to his mother to reduce the value of the net estate.  The district court’s finding that the machinery and equipment debt was worth $74,000 is not clearly erroneous. 

[¶30] Timothy Dronen also claimed he owed his mother $60,000 for operating and personal loans because he had litigation expenses and it had been a difficult farm year.  Timothy Dronen introduced evidence that he received a loan of $20,000 from his mother in September 2006 and an additional loan of $40,000 from his mother after the parties separated.  The district court concluded that the September 2006 loan for $20,000 was legitimate debt that was incurred by Timothy Dronen before he and Nancy Dronen separated.  However, the district court concluded the remaining $40,000 should be excluded from the parties’ marital debt because it was not legitimate marital debt. 

[¶31] The district court was presented with persuasive evidence that Timothy Dronen’s mother had not loaned him $60,000.  Timothy Dronen and his mother testified that Timothy Dronen had not paid his mother the first annual payment toward the operating and personal loans, and likely would not be able to pay her the second annual payment.  Furthermore, Timothy Dronen testified that he incurred $35,000 of debt to his mother between January 11, 2007, and March 2, 2007, because of attorney’s fees and a bad farm year.  However, Nancy Dronen introduced evidence at trial that since the parties’ separation, Timothy Dronen incurred over $300,000 of debt, including purchases for a new motorcycle, hot tub, and tractor.  Evidence was introduced that Timothy Dronen purchased an $8,000 motorcycle during a month in which he borrowed $11,500 from his mother.  The record supports the district court’s conclusion that Timothy Dronen inflated his debt.

[¶32] Additionally, Timothy Dronen testified that he borrowed money from his mother for attorney’s fees.  He introduced evidence that he had paid his current attorney $19,068.59 in attorney’s fees.  Nancy Dronen presented evidence showing she had incurred $21,425.51 in attorney’s fees.  In the district court’s findings of facts and conclusions of law, it stated it did not figure in the parties’ attorney’s fees.  Thus, it was not clearly erroneous for the district court to exclude Timothy Dronen’s debt for attorney’s fees from the marital debt, when Nancy Dronen had a comparable amount of attorney’s fees that were also excluded from the marital debt.  
See
 
Kitzmann v. Kitzmann
, 459 N.W.2d 789, 795 (N.D. 1990) (concluding it would be inequitable for one spouse to include his attorney’s fees in the marital estate when the other spouse did not).  The district court did not clearly err in reducing the debt Timothy Dronen claimed he owed his mother by $40,000.

C

[¶33] Timothy Dronen argues the district court erred in its distribution of the marital property.  Timothy Dronen contends the district court should have awarded him a greater distribution of the marital estate because he brought 1280 acres of Burleigh County farmland into the marriage, and the district court did not appropriately consider the source of the property when it divided the property.  He also asserts the district court erred in ordering an inequitable division of the marital property because it left him without enough assets to continue farming.  

[¶34] A district court must make an equitable distribution of the divorcing parties’ property. N.D.C.C.   14-05-24(1).  “We review a district court’s determination regarding the distribution of property as a finding of fact, and we will not reverse unless the district court’s findings are clearly erroneous.”  
Ulsaker v. White
, 2009 ND 18, ¶ 8, 760 N.W.2d 82. 

[¶35] “We have said that a property division need not be equal to be equitable, but a substantial disparity must be explained.”  
Id.
 at ¶ 9.  “A trial court must start with a presumption that all property held by either party whether held jointly or individually is to be considered marital property.  The trial court must then determine the total value of the marital estate in order to make an equitable division of property.”  
Id.
  “After a fair evaluation of the property is made, the entire marital estate must then be equitably divided between the parties under the 
Ruff-Fischer
 guidelines.”  
Hitz v. Hitz
, 2008 ND 58, ¶ 11, 746 N.W.2d 732; 
see
 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952); 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966).  Under the 
Ruff-Fischer
 guidelines, a district court must consider: 

[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

Hitz
, 2008 ND 58, ¶ 11, 746 N.W.2d 732 (citations omitted). 

[¶36] “The origin of the property is only one factor to consider under the 
Ruff-

Fischer
 guidelines, even if the property was acquired before the marriage or inherited.”  
Id.
 at ¶ 14.  “We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse.”  
Id.
  “Generally, a long-term marriage supports an equal property distribution.”  
Linrud v. Linrud
, 552 N.W.2d 342, 346 (N.D. 1996).

[¶37] The district court concluded the Burleigh County farmland was part of the marital estate.  The record indicates Timothy Dronen entered into an agreement with his grandparents to purchase the land in 1987.  That agreement was reduced to writing in March 1989 through a contract for deed.  The contract for deed provided Timothy Dronen would pay $90 an acre with six percent interest for fifteen years.  Timothy Dronen made his first payment in March 1990.  The parties married on June 16, 1990.  The subsequent fourteen annual payments were made during the course of the parties’ marriage.  The payments for the land came out of marital assets.  Additionally, the warranty deed to the land was placed in both Timothy Dronen and Nancy Dronen’s names. 

[¶38] Timothy Dronen argues the district court erred in not finding the Burleigh County land was a gift from his grandparents.  He contends the district court should have awarded him the value of the land at the time of the marriage and the increase in the value during the marriage should have been marital property.  Timothy Dronen did not introduce evidence establishing his grandparents had given him the land as a gift.  Specifically, Timothy Dronen did not introduce a gift and estate tax return as evidence that the grandparents intended it to be a gift.  Timothy Dronen claims he inherited the land because it was worth $333 an acre at the time of purchase, but he only had to pay $90 an acre.  Timothy Dronen has not introduced evidence sufficient to establish that this was a gift and, even if it were a gift, under the 
Ruff-Fischer
 guidelines, gifted property can still be equitably divided.

[¶39] Timothy Dronen also argues the district court’s division of the marital property was inequitable because it left him without enough assets to continue farming.  The district court valued the parties’ assets at $885,194.82 and awarded each party one half of the marital estate.  Because the district court awarded Timothy Dronen all of the farm real estate, machinery, and equipment, it required Timothy Dronen pay Nancy Dronen $332,842.90 over ten years plus six percent interest.  We have consistently held a long-term marriage supports an equal property distribution.  
See
 
Barth v. Barth
, 1999 ND 91, ¶ 8, 593 N.W.2d 359; 
Schoenwald v. Schoenwald
, 1999 ND 93, ¶ 23, 593 N.W.2d 350; 
Linrud v. Linrud
, 1998 ND 55, ¶ 7, 574 N.W.2d 875; 
Christmann v. Christmann
, 1997 ND 209, ¶ 7, 570 N.W.2d 221.  In this case, the parties were married for approximately seventeen years.  During their marriage, the parties had three children and shared their marital assets.  Thus, the record supports the district court’s conclusion to distribute one half of the marital assets to each spouse. 

D

[¶40] Timothy Dronen argues the district court erred in not awarding him spousal support.  He contends there is a substantial disparity in the parties’ earnings, and he cannot afford to continue farming if he pays Nancy Dronen the court-ordered cash settlement.  Timothy Dronen requests the case be remanded so the district court can award him spousal support or reconsider the property division.

[¶41] Section 14-05-24.1, N.D.C.C., authorizes a district court to award spousal support, and provides, “[t]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time.  The court may modify its spousal support orders.”  A court must apply the 
Ruff-Fischer
 guidelines when deciding spousal support.  
Lohstreter v. Lohstreter
, 1998 ND 7, ¶ 25, 574 N.W.2d 790.  A court is not required to make specific findings on each factor if we can determine the reasons for the court’s decision.  
Krueger v. Krueger
, 2008 ND 90, ¶ 8, 748 N.W.2d 671. “Property division and spousal support are interrelated, and often must be considered together.”  
Mellum v. Mellum
, 2000 ND 47, ¶ 19, 607 N.W.2d 580. “A difference in earning power is an important factor in both spousal support and property division determinations.”  
Id.
 “An award of spousal support must be made in light of the supporting spouse’s needs and ability to pay, and maintaining relative standards of living.”  
Wald v. Wald
, 556 N.W.2d 291, 297 (N.D. 1996).  We review a district court’s findings on spousal support under the clearly erroneous standard of review.  
Id.
 at 296.

[¶42] We conclude the district court did not err in not awarding spousal support to Timothy Dronen.  At trial, Nancy Dronen’s total net annual income was $35,849, and Timothy Dronen’s total five-year average net annual income was $15,468.  While a substantial disparity in the parties’ net annual income exists, the district court awarded Timothy Dronen much of the income-producing assets, including farmland, equipment, and machinery. Furthermore, the district court’s property distribution reflects Timothy Dronen’s requests.  In Timothy Dronen’s post-trial brief, he argued the district court should not award Nancy Dronen any of the farmland.  He stated, “It is more common to distribute a farm or other business asset to one spouse with an offsetting monetary award to the other spouse.”  This is exactly what the district court did.  It awarded Timothy Dronen the farmland, equipment, and machinery, and then offset that asset with a monetary award to Nancy Dronen payable over ten years.  Timothy Dronen received over $600,000 in farmland and was awarded much of the income-producing assets from the marriage. The district court did not err in failing to award Timothy Dronen spousal support because of its distribution of substantially all of the income-producing property to Timothy Dronen and no evidence of his needs or Nancy Dronen’s ability to pay.

E

[¶43] Timothy Dronen argues the district court erred in valuing Nancy Dronen’s FERS annuity at cash value.  Timothy Dronen asserts the district court should have used a formula that allocated the risks and benefits of retirement.  

[¶44] “Division of retirement benefits at the time of divorce is preferable if sufficient assets are available to divide the present value without hardship to the parties and where testimony on valuation is not speculative.”  
Moilan v. Moilan
, 1999 ND 103, ¶ 27, 598 N.W.2d 81.  “[I]n certain cases, marital property may be divided at the time of divorce by either awarding the present value of the benefits, or when there are insufficient assets for a present division or when present valuation is too speculative, by awarding a percentage of future payments.”  
Hogan v. Hogan
, 2003 ND 105, ¶ 17, 665 N.W.2d 672.  “[I]f the parties in a divorce action cannot agree upon the present value of a retirement account it may be necessary to divide the future benefits using a formula that equally allocates the risks and benefits of the retirement.”  
Lorenz v. Lorenz
, 2007 ND 49, ¶ 22, 729 N.W.2d 692.  The district court only needs to employ a formula when the value is not known.  
Id.
 

[¶45] Nancy Dronen valued her FERS annuity at $4,136.76 approximately one month before trial.  Timothy Dronen listed the value of the FERS annuity as unknown.  At trial, Nancy Dronen testified that $4,136.76 was the amount she had contributed toward the annuity.  Nancy Dronen testified she did not know whether her employer contributed to that annuity.  She testified that if she worked until her minimum age of retirement, 56 years and six months, she would receive an annuity.  She also testified that she would have to reach the minimum age of retirement before she could receive anything on the annuity.  Nancy Dronen testified that she believed that when she reached her minimum age of retirement, her health insurance and life insurance would be paid out of this annuity.  

[¶46] Timothy Dronen testified that it appeared the annuity would pay Nancy Dronen disability and all of her insurance upon retirement age.  Timothy Dronen testified the annuity would provide Nancy Dronen $25,000 a year.  Timothy Dronen introduced six FERS pamphlets into evidence, explaining the annuity benefits and retirement options.  According to Plaintiff’s Exhibit 52, the Federal Employees Retirement System consists of three tiers: Social Security Benefits, a Basic Benefit Plan, and a Thrift Savings Plan.  To be vested in the Basic Benefit Plan, an employee must have at least five years of creditable civilian service.  Eligibility for retirement benefits is determined by an employee’s age and number of years of creditable service.  Timothy Dronen also introduced an outline of Nancy Dronen’s retirement benefits.  The outline of benefits included a document entitled, “Federal Retirement Benefits Estimate.”  This document included a section entitled “Retirement Benefits Projecting (Inflation Adjusted).”  This section explained the “purchasing power of the [ ] FERS net annuity [ ] as you grow older in retirement.”  It stated that at age 56 and six months, in December 2023, Nancy Dronen’s FERS Annuity would be $14,580 annually and her FERS Supplement would be $10,872 annually.  The document also contained a section entitled, “Voluntary Retirement–Immediate Annuity,” which provided that Nancy Dronen would receive $21,060 annually after premiums for health and life insurance were deducted.  In Timothy Dronen’s post-trial brief to the district court, he argued, “Nancy would leave the marriage with approximately $250,000.00 in assets after factoring in her annuity at a conservative 10 years.  The information obtained by Tim and submitted to the Court on Nancy’s FERS/annuity establishes that the plan has value beyond her basis [sic] contributions which must be considered.”  The district court valued Nancy Dronen’s FERS annuity at $4,136.76 and awarded the annuity to her.

[¶47] Based on the record, we conclude the district court clearly erred in valuing Nancy Dronen’s FERS annuity at $4,136.76.  A review of the evidence indicates that the annuity was worth more than the $4,136.76 Nancy Dronen had contributed.  The Federal Retirement Benefits Estimate indicates that if Nancy Dronen elected voluntary retirement and took her annuity immediately at age 56 years and six months, she would be entitled to $21,060 annually after premiums for health and life insurance were deducted.  However, at age 62 when she could start receiving Social Security Benefits, her annuity would decrease to $12,526 because she would no longer be eligible to receive the FERS Supplement.  Although the evidence indicates the annuity was worth more than the cash contributed by Nancy Dronen, the present value of the annuity is unknown.  Because the parties’ testimony on the present value of the FERS annuity was speculative, the district court should have applied the 
Bullock
 formula, in which the number of years of the marriage during which the annuity was earned is divided by the number of total years in earning the annuity and multiplied by one-half Nancy Dronen’s benefit at retirement.  
See
 
Bullock v. Bullock
, 354 N.W.2d 904,  908-09 (N.D. 1984).  This would have awarded each party a percentage of future benefits.   

[¶48] We do not conclude that the 
Bullock
 formula is required in every case involving retirement benefits.  
See
 
Johnson v. Johnson
, 2002 ND 151, ¶ 18, 652 N.W.2d 315 (“Use of the 
Bullock
 formula to distribute retirement pay is not mandatory because the formula is not the only method of achieving an equitable division of marital property.”).  Rather, a district court should consider the facts of each case when deciding the best way to equitably divide the marital property.  In this case, application of the 
Bullock
 formula would have assisted the court in achieving an equitable division of the property because the present value of the annuity was unknown.  Applying the 
Bullock
 formula to this case will affect the remainder of the property division.  Therefore, we remand for the district court to apply the 
Bullock
 formula to Nancy Dronen’s FERS annuity, remove the value of the retirement account ($4,136) from the net estate, and then adjust the annual payments to reflect this reduction.

IV 

Attorney’s Fees 

[¶49] Timothy Dronen argues the district court abused its discretion in awarding Nancy Dronen $10,000 in attorney’s fees because it found he inflated his debt.  Timothy Dronen contends the district court misapplied the law in ordering attorney’s fees because it did not consider the parties’ needs and abilities to pay.  

[¶50] Timothy Dronen is correct that under N.D.C.C.   14-05-23, a district court may order one party to pay another party’s attorney’s fees in an action for separation or divorce, but must balance one party’s needs against the other party’s ability to pay.  
Bertsch v. Bertsch
, 2006 ND 31, ¶ 8, 710 N.W.2d 113.  “The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case.”  
Id.
  In awarding attorney’s fees, a district court is to consider fault only to the extent that one party has unreasonably escalated the fees.  
Id.
 at ¶ 10.  A district court must make specific findings supported by evidence of the parties’ financial conditions or needs.  
Id.
 at ¶ 8. 

[¶51] However, the district court’s award of attorney’s fees to Nancy Dronen is a sanction for Timothy Dronen’s misconduct.  A district court has the inherent power to sanction a litigant for misconduct.  
Dethloff v. Dethloff
, 1998 ND 45, ¶ 15, 574 N.W.2d 867.  “Sanctions based on this inherent power will be overturned on appeal only upon a showing of abuse of discretion.”  
Bachmeier v. Wallwork Truck Centers
, 544 N.W.2d 122, 125 (N.D. 1996).  “A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner.”  
Id.
   

[¶52] “Sanctions must be reasonably proportionate to the misconduct.”  
Dethloff
, 1998 ND 45, ¶ 16, 574 N.W.2d 867.  When sanctioning a party, the district court should consider “the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case; and, the availability of less severe alternative sanctions.”  
Id.
 

[¶53] The district court concluded that Timothy Dronen inflated his debt and sanctioned him by awarding Nancy Dronen $10,000 in attorney’s fees.  The district court found the value of the marital home was $25,000 based on the parties’ Finpak value.  Timothy Dronen valued the marital home at $4,000.  The district court found Nancy Dronen’s valuation of the parties’ livestock was more accurate because her values more closely represented what the parties stated was correct on their Finpaks.  The court further stated, “For Tim to say now that the livestock numbers on the Finpaks are not accurate, without some kind of third party appraisal or verification, is not acceptable to the Court.”  The court also found Timothy Dronen listed a debt of $260,000 to his mother even though “[h]is own appraiser appraised the machinery and equipment at $74,000.  In contemplation of a divorce, the Court believes Tim inflated his debt to his mother in order to reduce the value of the net estate.”  

[¶54] In addition, the record reveals that although Nancy Dronen requested documentation pertaining to the type and quantity of crops Timothy Dronen had planted in 2007, Timothy Dronen failed to provide the documents.  He also failed to disclose a CRP payment of $19,400 and then refused to sign off on that payment so the money could be applied to outstanding loans.   He also failed to disclose a life insurance policy and only disclosed some of the crops he had in his possession.

[¶55] However, based on our case law, an award of sanctions requires that the district court make findings on the basis and amount of the sanction.  
See
 
Dethloff
, 1998 ND 45, ¶ 15, 574 N.W.2d 867.  We therefore remand for the district court to explain more fully its reasons for the sanction and the amount of the sanction through further findings.  The district court should include findings on Timothy Dronen's culpability, prejudice to Nancy Dronen, and the availability of alternative sanctions.

V

[¶56] Therefore, we affirm the district court’s amended judgment, concluding the district court did not err in awarding custody of the youngest child to Nancy Dronen, excluding debt owed to Timothy Dronen’s mother from the marital estate and declining to award Timothy Dronen spousal support.  We further affirm the district court’s valuing the parties’ assets and distributing half the marital estate to each party with the exception of the district court’s valuation of Nancy Dronen’s FERS annuity which we reverse and remand for findings consistent with this opinion.  We also remand for the district court to make further findings on its award of attorney’s fees to Nancy Dronen.

[¶57] Mary Muehlen Maring

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting.

[¶58] I respectfully dissent.

[¶59] The district court misinterpreted the law on domestic violence.  As the majority states, at ¶ 17:

The court concluded that none of the incidents between Nancy Dronen and the two older children constituted domestic violence, citing the lack of serious bodily injury, the use of a dangerous weapon, or a pattern of domestic violence.

This statement reflects a misunderstanding of the law.  It confuses domestic violence with domestic violence that raises the presumption against an award of custody.  And it erroneously concludes that domestic violence that does not rise to the level of creating the presumption against the award of custody is irrelevant.

[¶60] The definitions in N.D.C.C. § 14-07.1-01(2) specify:

2. “Domestic violence” includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

Section 14-09-06.2, N.D.C.C., specifies:

1. For the purpose of custody, the best interests and welfare of the child is determined by the court’s consideration and evaluation of all factors affecting the best interests and welfare of the child.  These factors include all of the following when applicable:

. . . .

j. Evidence of domestic violence.  In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence.  If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child.  This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent’s participation as a custodial parent.  The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence.  If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court.  If the court awards custody to a third person, the court shall give priority to the child’s nearest suitable adult relative.  The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody.  As used in this subdivision, “domestic violence” means domestic violence as defined in section 14-07.1-01.  A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.

. . . .

The statutory language clearly provides that there is domestic violence that does not rise to the level of establishing the presumption and that such domestic violence is to be considered.  
Selzler v. Selzler
, 2001 ND 138, ¶ 19, 631 N.W.2d 564 (“Evidence of domestic violence which is insufficient to trigger the presumption remains a factor to be considered in determining a child’s best interest under N.D.C.C. § 14-09-06.2(1).”).  The district court failed to do so.

[¶61] After mentioning the mother’s pinning the oldest child to the floor, the majority says, at ¶ 17, “The court also found there was no evidence of discipline problems between Nancy Dronen and the youngest child.”  That language is reminiscent of the discredited premise in 
Schestler v. Schestler
, 486 N.W.2d 509, 512 (N.D. 1992) (“After finding that Charles had never directed violence toward Trista or Kristofer . . . .”).

[¶62] Under factor m, “Any other factors considered by the Court to be relevant to a particular child custody dispute,” the district court says, “Tim has been making disparaging remarks about Nancy in the community.”  The majority says, at ¶ 18:

A district court may consider any 
relevant
 information not otherwise provided for as a factor under N.D.C.C. § 14-09-06.2(m).  
DesLauriers v. DesLauriers
, 2002 ND 66, ¶ 17, 642 N.W.2d 892.

(Emphasis added.)  Here, there is no finding to show how the alleged statements are relevant to “the best interests and welfare of the child.”  There is no finding that the child was in any way aware of the alleged remarks to others.

[¶63] I would reverse and remand on the issue of the disputed custody.

[¶64] Dale V. Sandstrom