1998 ND 45

**Sandra L. DETHLOFF, Plaintiff and Appellee,**

v.

**William L. DETHLOFF, Defendant and Appellant.**

**Civil No. 970233.**

Supreme Court of North Dakota.

March 5, 1998.

Thomas M. Tuntland (argued), Mandan, for plaintiff and appellee.

Vinje Law Firm, Bismarck, for defendant and appellant; argued by Ralph A. Vinje.

MESCHKE, Justice.

[¶ 1] William Dethloff appealed a "reinstated" default judgment granting Sandra Dethloff a divorce and dividing their property. We affirm the entry of the default as a sanction, but we reverse the judgment entered and remand with directions to comply with N.D.R.Civ.P. 55(a)(2) by obtaining "such proof as may be necessary to enable it to determine and grant the relief ... to which [Sandra] may be entitled" in dividing marital property.

[¶ 2] William and Sandra were married June 13, 1989. On July 17, 1996, Sandra sued for divorce, division of marital property, and spousal support. On September 4, 1996, Sandra moved for default judgment, acknowledging William had appeared, but asserting he had not answered. On October 7, 1996, without counsel, William appeared at the hearing on the motion for default judgment. The trial court refused a default and entered a written order requiring him to file an answer by 5:00 p.m. on October 21, 1996. The order warned William the failure to file an answer would result in a default judgment "without further hearing."

[¶ 3] On October 18, 1996, William delivered a document to Sandra's then attorney. The document, not then filed, said: "I William Dethloff will give Sandra, 500.00 dollars a month until the day I die and then when every thing is sold she can [have] half of that plus half of the place when it is sold. I will accept all debts and taxes." On October 25, 1996, Sandra's attorney again filed an affidavit of default attesting that no answer had been filed or received, and seeking a default judgment. Sandra also filed an affidavit of proof and merits. William was not given

notice, based upon the October 7, 1996 order. The trial court ordered entry of the proposed default judgment against William. On November 4, 1996, the judgment was entered, with notice of its entry personally served on William on November 12, 1996.

[¶ 4] The default judgment gave Sandra all that she sought in an "unexecuted stipulation" with her affidavit of proof and merits: two older cars; $150,000 cash with $25,000 due immediately and the rest in four equal annual payments plus six percent interest; and an undivided half interest in a small piece of rural real estate valued at $500,000 by Sandra. The real estate was to remain in William's possession while he paid Sandra $6,000 annual rental for her half. The judgment directed William's estate to buy her half of the real estate for $250,000 in the event of his death, and required William to purchase her half for an arbitrated price if he remarried, cohabited, or left the residence for more than 30 days. The judgment gave "all other property" to William and allocated all $312,650 in marital debts to him.

[¶ 5] William did nothing for over 70 days after notice of the default judgment. *See* N.D.R.Civ.P. 60(b) ("motion must be made within a reasonable time"). On December 13, 1996, Sandra moved for a "Finding of Contempt and Other Relief," including a money judgment to enforce the $25,000 immediate cash payment due her. Those moving papers were served by mail on William's attorney, Ralph A. Vinje, that same day. The notice scheduled a hearing on the motion forty days later on January 23, 1997. Nothing more happened until the date for hearing.

[¶ 6] Finally, on January 23, 1997, William moved to vacate the default, to remove Sandra's then attorney for a conflict, and for time to file an answer and to do discovery. At the contempt hearing that day, the trial court charitably chose to consider William's tardy motions, declined to remove Sandra's counsel for the suggested conflict, and vacated the default judgment to give William time

for answering and discovery. With Mr. Vinje present, the court expressly directed:

> I think my Order was pretty clear too and the Order I'm referring to is the Order of October 7th in which Mr. Dethloff was ordered to file an Answer. I do find it a little bit difficult to believe that a person of Mr. Dethloff's obvious intelligence would think that bringing a one line, two line letter over to Mr. Robinson would constitute an Answer. Even though obviously Mr. Dethloff is not a lawyer, it's just very difficult for me to believe that he thought that that actually complied. Having said that though, ... I'm going to grant the motion to vacate the judgment....
>
> ... [I]n reviewing the file and the chronology[,] ... I'm getting the impression that Mr. Dethloff, you're delaying things as much as you possibly can. You're pushing things right up to the limit and then when it's clear that I'm serious about things, then you go, oh, wait a minute and I'm not going to have that anymore. What we are going to do is[,] from here on in[,] comply with the rules, specifically Rule 8.3.... [W]hat I'm going to require is that pursuant to Rule 8.3, within 60 days of today you have the joint meeting that's required under the Rule and then from there on, the Rule sets out time lines for filing the informational statement and that sort of thing. So 60 days from today, or no later than 60 days from today, obviously if you can do it sooner, great but no later than 60 days from today I want the meeting to be accomplished and then I think you have 30 days after that to file the informational statement.... [1]

For over 60 days, William's attorney did nothing visible.

[¶ 7] On April 3, 1997, Sandra *again* moved for default judgment, supported by her own and her new, substitute attorney's affidavits. Her attorney attached a copy of his cautionary letter of February 19, 1997, to Vinje "making it quite clear that I would not tolerate any delay in this action, whatsoever." [2]

---

1. Effective August 1, 1996, N.D.R.O.C. 8.3(a) directs: "Within 30 days after service of the complaint, the parties and their attorneys shall meet in person or by electronic means to prepare a joint informational statement ... and a preliminary property and debt listing," to be filed within 5 days after the joint meeting. N.D.R.O.C. 8.3(b) directs: "Within 30 days after the informational statement is filed," the trial court should issue a scheduling order for other deadlines before trial.

2. The letter warned:

Sandra's attorney's affidavit swore "Mr. Dethloff had not provided any information regarding the parties' assets when I served him, through his attorney, interrogatories by mail on February 19, 1997." Her attorney's affidavit documented William's belated and fragmentary responses, dated March 26, 1997, to interrogatories seeking a list and estimated values of all business assets, including accounts receivable. Without explanation, William answered that he had no accounts receivable. Another particularly flagrant answer said of "[a]pproximately 330 head of cattle ... on my property," his daughter owned one-half and "[o]wnership of the other half is yet to be determined." William's discovery answers were abusive, evasive, and incomplete.

[¶ 8] Sandra's affidavit described a meeting between the spouses and their attorneys on March 31, 1997, where William remained evasive and nonresponsive about assets that Sandra was personally familiar with from her participation in the marital businesses. She described how William "has been hiding and selling assets." William made no sworn response to contradict Sandra's assertions he was "hiding and selling assets."

[¶ 9] At the May 12, 1997 hearing on Sandra's renewed motion for a default sanction, Sandra testified further about William's delay and evasiveness, as well as about her work contributions and her investment of "[a]pproximately 90,000" of "personal money" in Dethloff Cattle Company. William offered no rebuttal evidence.

[¶ 10] When the trial court pointed out that the Rule 8.3 informational statement had not yet been filed, Vinje responded "the one we received [from Sandra's attorney, mailed April 29] has been signed and either went out in this morning's mail or is going out in tonight's. I'm not sure which." He offered no explanation why neither he nor his client had initiated something sooner. The signed 8.3 procedural statement was not filed until May 13, 1997, the day after the hearing, and no satisfactory N.D.R.O.C. 8.3(b)(5) listing by William of the marital property and debts had been filed.

I want to emphasize that Bill has been playing around with this case too long. As you know, Judge Haskell has indicated he is not going to tolerate any games. I fully intend to bring

[¶ 11] In an exchange with the court, Mr. Vinje argued "we went ahead and had our meeting on the 8.3. We cooperated in that." The trial court pointed out:

After I ordered it and it still wasn't here in time. I mean it was supposed to be here no later than 90 days from January 23rd and it's still not here.

When Mr. Vinje protested that Sandra's attorney "only sent it out the end of April ... so we can only take responsibility for a small portion of that," he again failed to recognize his client's dereliction in not timely initiating disclosures. Sandra's attorney also mentioned that "[t]he meeting was delayed two times because of Mr. Vinje's schedule."

[¶ 12] The trial court repeated its January 23 findings that William had been "delaying things as much as [he] possibly can" and the court's disbelief that William "would think that bringing a one line, two line letter over to [Sandra's attorney] would constitute an Answer." The court reasoned:

I think I made it very clear at that time that even though I didn't specifically issue another order that an Answer should be filed, that I didn't think that what had been given to [Sandra's attorney] was anything close to approaching an Answer. I guess I didn't think I needed to issue another order because I thought I made it pretty clear that there wasn't an Answer filed.

The trial court concluded:

I think I have to draw a line here and the line I'm going to draw is[:] I'm going to grant the motion for default judgment and reinstate the judgment that was earlier put in place, partly I believe because of Mr. Dethloff's total unwillingness, inability or whatever word is appropriate to get this case going even though it's been made clear way back in October that we needed to do that. Again, I'm not blaming you, Mr. Vinje. You should have filed an Answer but Mr. Dethloff brought this on himself a long time before that. I also believe that Rule 55 allows for a default

anything that even looks like a game to Judge Haskell's attention. I also intend to seek every sanction available if Mr. Dethloff engages in any game playing whatsoever.

judgment in this case under subsection (a)(1) of the Rule rather than requiring the Court to take proof to determine relief. I understand your argument, Mr. Vinje and I think though in this case that what is being asked for is a definite and clear relief that can be determined very easily by the Court and therefore, I'm granting the default judgment and requiring that the judgment that was earlier entered be reinstated.

The court's written order for reinstatement of the prior default judgment was entered on May 15, 1997.

[¶ 13] The reinstated judgment was filed the same day. William appealed it, arguing an answer of sorts had been filed and the sanction was excessive.

[¶ 14] From this deep record of intentional delay, evasion, and nonresponsiveness by William, we conclude the ultimate sanction of default was appropriate. William had been relieved from one default judgment previously. He could not have been misled, and he was plainly warned. He continued with more delay, evasiveness, and noncompliance. A great deal more delay and evasiveness exists here than the minimal effect of the lack of an appropriate pleading. William's misconduct was not minimal, but extreme, persistent, and willful.

[¶ 15] We view entry of this default judgment as an exercise of the trial court's inherent power to sanction a litigant for misconduct:

> Sanctions based on this inherent power will be overturned on appeal only upon a showing of abuse of discretion. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. A district court acts in such a manner when its "exercise of discretion is not the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination, or, as alternatively stated, when it misinterprets or misapplies the law."

*Bachmeier v. Wallwork Truck Centers*, 544 N.W.2d 122, 125 (N.D.1996) (citations omitted). We see no abuse of discretion here.

[¶ 16] Sanctions must be reasonably proportionate to the misconduct. *See Vorachek v. Citizens State Bank*, 421 N.W.2d 45, 51 (N.D.1988)("Sanctions must be tailored to the severity of the misconduct...."). In *Bachmeier*, we explained:

> In sanctioning a party, the district court should at least consider "the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case; and, the availability of less severe alternative sanctions."

544 N.W.2d at 124–25 (citation omitted). We recognize a default judgment is "the ultimate sanction" and "should be used sparingly and only in extreme situations." *Dakota Bank & Trust Co. v. Brakke*, 377 N.W.2d 553, 558 (N.D.1985). In this case, we conclude the ultimate sanction of default was appropriate and proportional.

[¶ 17] Moreover, under N.D.R.Civ.P. 26(f), a trial court has authority to enter an order "establishing a plan and schedule for discovery, setting limitations on discovery, if any, and determining such other matters ... as are necessary for the proper management of discovery in the action." The court did so here. William did nothing timely to comply with the discovery directions to him. He continued to be evasive, incomplete, and unresponsive.

[¶ 18] Besides a trial court's inherent power to sanction, the civil rules of procedure expressly authorize a wide range of sanctions, including a default judgment, for procedural misconduct in discovery. "If a party ... fails to obey an order to provide or permit discovery, ... or if a party fails to obey an order entered under Rule 26(f), the court ... may make such orders in regard to the failure that are just." N.D.R.Civ.P. 37(b)(2). Alternative remedies include "designat[ing] facts ... to be established," "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence," or "rendering a judgment by default against the disobedient party." N.D.R.Civ.P.

37(b)(2)(A),(B),(C). "In lieu ... or in addition," the court may treat "the failure to obey any orders" as a contempt of court. N.D.R.Civ.P. 37(b)(2)(D). "In lieu ... or in addition thereto," the court may "require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure," unless it would be unjust. N.D.R.Civ.P. 37(b)(2)(E). Since William and his attorney flagrantly disobeyed a discovery order in this case, in addition to failing to file a specific pleading ordered, we conclude the trial court correctly directed entry of a default judgment against William as the most appropriate sanction for William's pronounced procedural misconduct.

[¶ 19] However, we conclude the trial court mistakenly believed "Rule 55 allows for a default judgment in this case under subsection (a)(1) of the Rule rather than requiring the Court to take proof to determine relief." Whenever "a party against whom a judgment for affirmative relief is sought has failed to plead or *otherwise appear*," (our emphasis), the court may direct "an appropriate judgment" without further proof for a documented "sum certain or for a sum which can by computation be made certain...." N.D.R.Civ.P. 55(a)(1). An equitable division of marital property cannot be a documented "sum certain" without a settlement stipulation, and William had appeared in fact. The trial court was mistaken; N.D.R.Civ.P. 55(a)(1) did not apply.

[¶ 20] "In all. other cases, the court, before directing the entry of judgment, shall require such proof as may be necessary to enable it to determine and grant the relief, if any, to which the plaintiff may be entitled." N.D.R.Civ.P. 55(a)(2). *See Thompson v. Goetz,* 455 N.W.2d 580, 584 (N.D.1990)("under the express terms of the Rule, in all cases other than those in which a sum certain is sought, some form of proof must be submitted to establish liability as well as damages"). To divide marital property absent an agreed settlement, a trial court must ordinarily determine, as a matter of fact, the value of the marital estate and give some

reasons why the particular division is equitable. *See Graves v. Graves,* 340 N.W.2d 903, 906 (N.D.1983); *VanRosendale v. VanRosendale,* 333 N.W.2d 790, 791 (N.D.1983). In our opinion, the trial court did not correctly comply with N.D.R.Civ.P. 55(a)(2) to enter only "an appropriate judgment" after "requir[ing] such proof as may be necessary to enable it to determine and grant the relief" that Sandra "may be entitled" to in division of the marital estate.

[¶ 21] We realize the trial court had some evidence to consider in Sandra's "Affidavit of Proof and of Merits" dated October 23, 1996, filed with her motion for entry of the first default judgment, as well as in her later testimony on May 12, 1997, for her renewed motion for a default sanction. Her latter testimony described her participation in the marital businesses and her financial investment in them. In her affidavit, Sandra attested she and William had lived together since November 1, 1984, and had married on June 13, 1989, and she estimated an accumulated marital estate of $819,150. Her summary of assets excluded $312,650 debts in estimating the net estate, but it included a conclusory and startling valuation of $500,000 for a small piece of rural real estate.[3] If the credibility of the evidence on the makeup of the marital estate was fairly weighed, the trial court gave no indication of it.

[¶ 22] Rather, the trial court simply reinstated the November 4, 1996 default judgment, without making any findings. In November 1996, the court had summarily concluded the property distribution proposed by Sandra "appears to be equitable." Blindly accepting Sandra's proposal without any evidentiary weighing at all was not correct. To enter this kind of default, the trial court must independently find the value of the marital estate and make the division, as N.D.R.Civ.P. 55(a)(2) directs, to reach "the relief, if any, to which the plaintiff may be entitled."

[¶ 23] To do so, N.D.R.Civ.P. 55(a)(2) authorizes the trial court to "[h]ear the evidence and assess the damages," or to

---

**3.** With his January 23, 1997 motion to vacate the first default judgment, William filed a real estate agent's "Comparative Market Analysis" of a 90-

year–old rural home valued at $124,900. The record is unclear whether this appraisal included all of the marital real estate or not.

"[d]irect a reference for the purpose of an accounting or for the taking of testimony or for a determination of the facts."[4] This case may not need much by way of findings by the trial court, but clearly what we have in this record is not enough. *See* N.D.R.Civ.P. 52(a)(part): "In all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment...."

[¶ 24] Therefore, we reverse this default judgment and remand with directions for the trial court to enter an appropriate default judgment by making independent findings and a property division that is equitable under the familiar *Ruff–Fischer* guidelines for a marriage of this duration, the contributions by each spouse, and the extent of the property accumulated during the marriage. On remand, the trial court will have broad discretion to apply other appropriate sanctions against William, as the "in addition" listings of N.D.R.Civ.P. 37(b)(2) highlight. In this case, the exercise of the court's discretion might well include, at least, awarding reasonable attorney fees and costs to Sandra for the additional expense that William's obstructive conduct has caused her.

[¶ 25] VANDE WALLE, C.J., and NEUMANN, J., concur.

SANDSTROM, Justice, dissenting.

[¶ 26] Because the entry of default judgment as a sanction is too harsh under the circumstances of this case, I would reverse the entry of default judgment and remand for consideration of a lesser sanction. I therefore dissent.

4.  *See Overboe v. Odegaard,* 496 N.W.2d 574, 578 (N.D.1993):

> Ordinarily, it would be preferable for a trial court to require the affidavit of proof for a default judgment to be made by someone competent to testify on personal knowledge about facts or records that would be admissible in evidence. But, as in all evidentiary matters, the trial court has broad discretion in the quality of evidence that it may require before ordering entry of a default judgment.

I

[¶ 27] Generally, William Dethloff's April 9, 1997, answer—even if late—would preclude the entry of a default judgment because it was filed prior to the entry of judgment. *See Filler v. Bragg,* 1997 ND 24, ¶ 11, 559 N.W.2d 225 ("By its very language, Rule 55 provides default judgment may not be obtained against a party who has appeared. If a party appears by motion following notice but prior to entry of default judgment, a trial court, if it denies the party's motion, must allow a reasonable time for the party to file a responsive pleading prior to the entry of default judgment."); *see also Colorado Compensation Ins. Auth. v. Raycomm Transworld Indus.,* 940 P.2d 1000, 1001 (Colo.Ct. App.1997) ("Thus, although defendant's answer here was filed late, because it was filed before a default had been entered and before the trial court had ruled on the motion for default judgment, the court should have denied the motion and erred in not doing so."); *Estate of Snyder,* 562 So.2d 403, 404 (Fla. Dist.Ct.App.1990) ("If a defendant files an untimely answer before a default is entered, the entry of the default is avoided."); *Moore v. Sullivan,* 123 N.C.App. 647, 473 S.E.2d 659, 660 (1996) ("After an answer has been filed, even if the answer is untimely filed, a default may not be entered."); *cf. Resolution Trust Corp. v. Gosbee,* 536 N.W.2d 698, 702 (N.D.1995). I thus agree the result in this case is an exercise of the trial court's inherent power to sanction.

II

[¶ 28] The facts of record support the trial court's finding William Dethloff had chosen delay as part of his litigation strategy. After the first default judgment had been entered on November 4, 1996, he waited until Janu-

> While the trial court is not required to receive any evidence from a defaulting divorce respondent who has appeared, as William has, the court may, in its discretion, do so to the extent it believes William's input will assist it in formulating the "appropriate judgment" by default. For an example, *see Varriano v. Bang,* 541 N.W.2d 707, 710 (N.D.1996)(since they "were not in 'total default' because they had answered and appeared," trial court proceeded with the jury trial in the absence of the defendants after they defaulted by leaving the trial as it began).

ary 23, 1997, to move to vacate the default, even though in an affidavit he admits he had met with an attorney as early as November 18, 1996, regarding the judgment entered against him. Additionally, the motion to vacate the judgment appears to have been made only in response to Sandra Dethloff's motion for a finding of contempt based on William Dethloff's failure to comply with the provisions of the November 4, 1996, judgment. Furthermore, the transcript of the May 12, 1997, hearing also discloses the trial court was concerned about the effect of a delay in light of the possibility William Dethloff was concealing and dissipating assets. Based upon these facts, sanctions are appropriate.

[¶ 29] Sanctions, however, must be reasonably proportionate to the misconduct. *See Vorachek v. Citizens State Bank,* 421 N.W.2d 45, 51 (N.D.1988) ("Sanctions must be tailored to the severity of the misconduct. . . ."). In *Bachmeier v. Wallwork Truck Centers,* 544 N.W.2d 122, 125 (N.D.1996), we stated:

> "In sanctioning a party, the district court should at least consider 'the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case; and, the availability of less severe alternative sanctions.' "

We have previously recognized default judgment is "the ultimate sanction" and "should be used sparingly and only in extreme situations." *Dakota Bank & Trust Co. v. Brakke,* 377 N.W.2d 553, 558 (N.D.1985). Under the facts of this case, the sanction of default is too harsh.

[¶ 30] During the May 12, 1997, hearing, the trial court stated:

> "I think I made it very clear at [the January 23, 1997, hearing] that even though I didn't specifically issue another order that an Answer should be filed, that I didn't think that what had been given to Attorney Robinson was anything close to approaching an Answer. I guess I didn't think I needed to issue another order because I thought I made it pretty clear that there wasn't an Answer filed."

During the January 23, 1997, hearing, the trial court had stated:

> "Okay. All right, well I think my Order was pretty clear too and the Order I'm referring to is the Order of October 7th in which Mr. Dethloff was ordered to file an Answer. I do find it a little bit difficult to believe that a person of Mr. Dethloff's obvious intelligence would think that bringing a one line, two line letter over to Mr. Robinson would constitute an Answer. Even though obviously Mr. Dethloff is not a lawyer, it's just very difficult for me to believe that he thought that that actually complied. Having said that though, I think I'm going to grant the motion to vacate the judgment and that's for one reason and one reason only, that if I don't, I suspect that it will be in here on a weekly basis with contempt motions for Mr. Dethloff's failure to follow the judgment and I would rather see this case either settled or tried so that Mr. Dethloff and Ms. Dethloff can work things out because in my experience, if you can come to a mutual decision whether you like the decision or not, it's a lot easier and a lot better than having a judge shove it down your throat.
>
> "I will say another thing though and that is in reviewing the file and the chronology that Mr. Robinson went through, I'm getting the impression that Mr. Dethloff, you're delaying things as much as you possibly can. You're pushing things right up to the limit and then when it's clear that I'm serious about things, then you go, oh, wait a minute and I'm not going to have that anymore. *What we are going to do is from here on in comply with the rules, specifically Rule 8.3 and Ms. Dethloff, I'm not going [sic] set a specific deadline for you to get another lawyer because I know that that might not be that easy but what I am going to do is—there hasn't really been an official Answer filed. There's enough I guess to get by the default judgment but what I'm going to require is that pursuant to Rule 8.3, within 60 days of today you have the joint meeting that's required under the Rule and then from there on, the Rule sets out time lines for filing the informational statement and that sort of thing.* So 60 days from today, or no later than 60 days from today, obviously if you can do it sooner,

great but no later than 60 days from today I want the meeting to be accomplished and then I think you have 30 days after that to file the informational statement, that way the case will get rolling and from what you've said, it sounds like there's been considerable discussion with regard to settlement already. Obviously if the case can be settled between now and then, that's fine too." (Emphasis added).

[¶ 31] While, as stated above, the record supports the conclusion William Dethloff had adopted delay as a litigative strategy, this excerpt shows, contrary to the trial court's later recollection, its statements during the January 23, 1997, hearing did not direct Dethloff to file a "formal" answer. While the trial court emphasized N.D.R.O.C. 8.3, it did not specify it was requiring William Dethloff to file a "formal" answer or when it should be filed. Furthermore, at the May 12, 1997, hearing, William Dethloff's attorney, Ralph Vinje, acknowledged the failure to file the answer was his fault:

> "I screwed up. I got busy with preparing to deal with everything else and I just simply neglected to file an Answer. Had Mr. Tuntland contacted me and said where's your Answer, he'd have gotten one in the return mail. As soon as I got this motion, he got one."

The majority opinion at ¶ 11 states, during the May 12, 1997, hearing, "Sandra's attorney also mentioned that '[t]he meeting was delayed two times because of Mr. Vinje's schedule.'" The majority ignores Mr. Vinje's reply: "Actually it was because of my dying mother-in-law, who finally did it on Sunday." I recognize the possible prejudice to Sandra Dethloff if William Dethloff is in fact dissipating assets; however, the lack of an answer, as was stated by his attorney, "has had really no effect on our continuing— the fact like Mr. Tuntland said, we went ahead and had our meeting on the 8.3." Indeed, the N.D.R.O.C. 8.3 informational statement signed by both parties and their attorneys and filed with the court May 13, 1997, had set a suggested trial date of July 15, 1997.

[¶ 32] The minimal effect of the lack of an answer and the stage to which this case has progressed make it clear justice would be best served by an on-the-merits resolution.

*Cf. Murdoff v. Murdoff,* 517 N.W.2d 402, 403 (N.D.1994) ("We also prefer a judgment on the merits over a default judgment when it is fair to do so."). Sanctions, however, are appropriate here, because William Dethloff, while apparently not to blame for the late filing of the "formal" answer, has been less than cooperative, and the record does support a finding of delay. As such, I would remand this case to the district court for consideration of a lesser sanction, "such as a deadline with an automatic imposition of a sanction so that the parties may be apprised of the alternatives for noncompliance." *Dakota Bank & Trust Co.* at 558. This would not eliminate default as a sanction option should William Dethloff continue to delay the proceedings. Additionally, Sandra Dethloff's brief states William Dethloff has not timely, and completely, responded to discovery requests. Should he fail to comply with any further discovery requests, default may be an appropriate sanction, if she employs the mechanism provided under N.D.R.Civ.P. 37. *See Rudh v. Rudh,* 517 N.W.2d 632, 635 (N.D.1994) (noting a trial court may not impose sanctions for discovery violations under N.D.R.Civ.P. 37 "until a party violates a discovery order").

[¶ 33] MARING, J., concurs.