Filed 8/22/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 167

Richard K. Kelly, Plaintiff and Appellee

v.

Karol L. Kelly, Defendant and Appellant

No. 20100388

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Sonna M. Anderson, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Thomas D. Kelsch, P.O. Box 1266, Mandan, N.D. 58554-7266, for plaintiff and appellee.

Christopher Eric Rausch, P.O. Box 2097, Bismarck, N.D. 58502-2097, for defendant and appellant.

Kelly v. Kelly

No. 20100388

Sandstrom, Justice.

[¶1] Karol Kelly appeals from a judgment in a divorce action brought by Richard Kelly in which the district court granted her custody of the parties’ minor child, restrained her from interfering with Richard Kelly’s insurance business for five years, and awarded Richard Kelly a $40,000 cash payment for Karol Kelly’s conduct.  We conclude the district court had subject matter jurisdiction to decide child custody, the court did not abuse its discretion in awarding Richard Kelly the $40,000 cash payment, and the court did not err in restraining Karol Kelly from interfering with Richard Kelly’s insurance business.  However, we conclude the court erred in not limiting the geographic scope of the restraining order under N.D.C.C. § 9-08-06.

 

I

[¶2] Richard Kelly is a non-Indian, and Karol Kelly and the parties’ minor child are enrolled members of the Standing Rock Sioux Indian Tribe.  The parties began a relationship in 1997, when both lived in South Dakota, where Richard Kelly operated his family’s insurance agency in Sioux Falls with his father.  The insurance agency specialized in selling insurance to Indian tribes, and Karol Kelly began working for the agency.  Karol Kelly subsequently moved to Cannonball, where she owned land on the Standing Rock Sioux Indian Reservation, and she incorporated Great Plains Tribal Insurance to handle insurance accounts for tribal entities.  Richard Kelly also moved to Cannonball, where he incorporated Kelly Insurance to handle tribal insurance accounts, and the couple lived on the land owned by Karol Kelly on the Standing Rock Sioux Indian Reservation.  Karol Kelly worked at Kelly Insurance, preparing billing statements and sales proposals and assisting with clients.  Richard and Karol Kelly were married in Nevada in 2003, and their minor child was born in Bismarck in 2003.  The family lived together at Cannonball on the Standing Rock Sioux Indian Reservation until 2005, when Richard Kelly left the home and ultimately rented a condominium in Bismarck.  In March 2006, Richard Kelly purchased a house in Bismarck, and he later moved Kelly Insurance to Bismarck.

[¶3] In December 2006, Richard Kelly brought this divorce action against Karol Kelly in state district court.  Karol Kelly made a general appearance in the action and answered and counterclaimed, seeking a divorce, child custody, child support, spousal support, attorney fees, and an equitable division of the parties’ marital property. While the state court divorce action was pending, Karol Kelly continued to work at Kelly Insurance in Bismarck until October 2007, when Richard Kelly terminated her employment.  Richard Kelly claims the parties had attempted to reconcile while the divorce was pending and Karol Kelly and the minor child lived with him in Bismarck from March 2007 through June 2007.

[¶4] In December 2007, the parties disputed holiday visitation, and after a hearing, the state district court granted Richard Kelly holiday visitation.  Karol Kelly subsequently moved to dismiss the state court divorce action for lack of subject matter jurisdiction, and on January 11, 2008, she filed a separate divorce action in the Standing Rock Sioux Tribal Court.  The state court decided it had jurisdiction to dissolve the marriage, but ruled it lacked jurisdiction over the incidents of the marriage.  A May 2008 state court judgment granted Richard Kelly a divorce from Karol Kelly, but dismissed the rest of the action.

[¶5] In 
Kelly v. Kelly
, 2009 ND 20, ¶¶ 10-11, 759 N.W.2d 721, we concluded the state court had personal jurisdiction over Karol Kelly and ordinarily would have had subject matter jurisdiction to adjudicate the incidents of the marriage; however, we recognized the jurisdictional issue was interrelated with tribal court jurisdiction and considerations of tribal sovereignty and autonomy.  We held the state court had concurrent subject matter jurisdiction with the tribal court to adjudicate the incidents of the parties’ marriage and the state court erred as a matter of law in concluding the tribal court had exclusive jurisdiction.  
Id.
 at ¶ 18.  We nevertheless said our conclusion that the state court had concurrent jurisdiction with the tribal court over the incidents of the marriage did not end the inquiry, because there were separate statutory jurisdictional requirements involving “home state” status in the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”), N.D.C.C. ch. 14-14.1, for a court of this State to exercise jurisdiction over child custody determinations.  
Kelly
, at ¶ 19.  We said the UCCJEA treated the tribe as a state, and we outlined the statutory requirements in N.D.C.C. § 14-14.1-12 for initial custody determinations in cases involving different states.  
Kelly
, at ¶¶ 19-23.  We reversed the state court dismissal and remanded, stating:

The UCCJEA essentially prioritizes home state status, and if this state is the child’s home state the district court has jurisdiction.  If this state is not the child’s home state, the court must determine whether another state is the home state and, if so, may only acquire jurisdiction if a court of the home state has declined jurisdiction.  Thus, on remand, the parties should be given an opportunity to present evidence relevant to the jurisdictional facts, and the district court must determine whether this state, the reservation, or neither is the child’s home state.

Although the UCCJEA governs jurisdiction of the determination of child custody, it does not control jurisdiction over the remaining issues in the divorce.  Thus, even if the district court determines that the reservation is the child’s home state and that the tribal court therefore has jurisdiction over child custody, the district court retains concurrent jurisdiction over the remaining incidents of the marriage and may choose to exercise that jurisdiction or defer to the tribal court if the court concludes that the tribal court is a more convenient forum.

Kelly
, at ¶¶ 21-22 (citations omitted).

[¶6] While 
Kelly
 was pending in this Court, the Standing Rock Sioux Tribal Court denied Richard Kelly’s motion to dismiss the tribal court action on June 23, 2008, concluding the tribal court had jurisdiction to decide child custody.  The tribal court judge thereafter disqualified himself, and on December 31, 2008, a different tribal court judge granted Richard Kelly’s motion for a continuance for preparation of a custody investigator’s report.  This Court filed its decision in 
Kelly
 on February 3, 2009.

[¶7] On remand after 
Kelly
, the state court asked the parties about the status of the tribal court action.  The record reflects the Standing Rock Sioux Tribal Court dismissed Karol Kelly’s tribal court divorce action with prejudice on April 8, 2009, about two months after this Court’s decision in 
Kelly
, because Karol Kelly had “willfully disregarded the [Tribal] Court’s orders concerning the custody investigator.”  The record also includes a May 14, 2009, letter from the state court judge to the tribal court judge, in which the state court judge recognized the tribal court action had been dismissed with prejudice and said the state court would exercise its jurisdiction to resolve the case in a trial scheduled for January 2010.

[¶8] In May 2009, the state court issued interim custody and visitation orders.  On January 8, 2010, Karol Kelly moved to dismiss the issue about child custody in the state court action, arguing the Standing Rock Sioux Indian Reservation was the child’s home state and the state court lacked jurisdiction to decide custody, because the Standing Rock Sioux Tribal Court had not expressly declined jurisdiction and affirmatively deferred jurisdiction to the state court.  Karol Kelly provided the state court with a decision by the Standing Rock Sioux Tribal Supreme Court issued on November 18, 2009, which reversed the Standing Rock Sioux Tribal Court’s dismissal to the extent the action was dismissed with prejudice.  In that decision, the Standing Rock Sioux Tribal Supreme Court ruled the tribal court’s decision “failed to vest North Dakota with jurisdiction over the incidental issues that arose on the Standing Rock Indian Reservation involving a tribal member and her enrolled minor child who were both residents of the Standing Rock Indian Reservation.”  At the beginning of the January 12, 2010 trial, the state court acknowledged Karol Kelly’s motion to dismiss the custody issue and indicated the court would take the motion under advisement and rule after completion of the trial.  At trial, Karol Kelly testified she had begun another divorce action in the Standing Rock Sioux Tribal Court, but Richard Kelly testified he had not been personally served in the tribal court action.

[¶9] In a decision issued June 23, 2010, the state court acknowledged the Standing Rock Sioux Tribal Supreme Court’s decision and said Karol Kelly had represented that she had refiled her tribal court divorce action, but she did not provide a case number for the refiled tribal court action and Richard Kelly testified he had not been served with a new tribal court action.  The state court decided the child’s “home state” was the Standing Rock Sioux Indian Reservation and said the state court had contacted the tribal court clerk’s office in June 2010 and was informed tribal court records indicated no open cases involving Karol and Richard Kelly.  The state court ruled the tribal court had declined to exercise jurisdiction as a result of Karol Kelly’s unjustifiable conduct, and the state court decided it had jurisdiction over child custody.  The state court awarded Karol Kelly custody of the parties’ minor child, distributed the parties’ marital property, restrained Karol Kelly from interfering with Richard Kelly’s insurance business for five years, and awarded Richard Kelly a $40,000 cash payment in part for Karol Kelly’s conduct in tribal court proceedings.

[¶10] Karol Kelly moved for reconsideration, arguing the tribal court had not declined jurisdiction over child custody.  She provided the state court with documents from the tribal court indicating that in February 2010, she had served Richard Kelly with an amended complaint for the tribal court divorce action.  Karol Kelly also provided the state court with March 2010 letters from both parties to the clerk of the Standing Rock Sioux Tribal Court, which indicated a hearing in tribal court was not necessary until after the state court issued its decision.  Richard Kelly acknowledged there was a pending case in tribal court and was “uncertain as to why the Tribal Court Clerk told [the state court] otherwise.”  Karol Kelly’s submission to the state court also included a document reflecting a tribal court judge had been assigned to the tribal court action on January 5, 2010, but does not otherwise indicate when that tribal court action was filed.  The state district court denied Karol Kelly’s motion for reconsideration, acknowledging there was a pending action in tribal court, but deciding it would “stand on the opinion and order already issued so that the appeals, if any may be filed and the case can move towards final resolution.”  A final judgment was entered, and Karol Kelly appealed.

[¶11] The district court had jurisdiction to decide the incidents of the parties’ marriage under our decision in 
Kelly
, and the primary issue in this case involves the district court’s subject matter jurisdiction to decide child custody under N.D.C.C. § 14-14.1-12.  Karol Kelly’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 28-27-01.

 

II

[¶12] In 
Schirado v. Foote
, 2010 ND 136, ¶ 7, 785 N.W.2d 235, we recently described our standard of review of a district court’s determination of subject matter jurisdiction to decide child custody under the UCCJEA in a case involving Indian and  non-Indian parents:

It is well settled under North Dakota law that challenges to a district court’s subject matter jurisdiction are reviewed de novo when the jurisdictional facts are not in dispute.  
Harshberger v. Harshberger
, 2006 ND 245, ¶ 16, 724 N.W.2d 148.  When jurisdictional facts are disputed, the district court’s decision on subject matter jurisdiction necessarily involves findings of fact and conclusions of law.  Therefore, when disputed facts surround a challenge to the district court’s subject matter jurisdiction, we are presented with a mixed question of law and fact.  
See
 
Escobar v. Reisinger
, 64 P.3d 514, 516 (N.M. Ct. App. 2003) (holding jurisdictional challenge under the Uniform Child Custody Jurisdictional Act (“UCCJA”) is mixed question of law and fact).  Under this standard, we review the “questions of law subject to the de novo standard of review [and the] findings of fact subject to the clearly erroneous standard of review.”  
Wigginton v. Wigginton
, 2005 ND 31, ¶ 13, 692 N.W.2d 108.

[¶13] Karol Kelly argues the state court erred in deciding it had subject matter jurisdiction to determine child custody.  She asserts the Standing Rock Sioux Indian Reservation is the child’s home state and claims there is a pending custody proceeding in the Standing Rock Sioux Tribal Court and that court has not declined to exercise jurisdiction over custody.  Richard Kelly responds the Standing Rock Sioux Tribal Court has declined jurisdiction to decide custody and the state court properly exercised subject matter jurisdiction.

[¶14] Subject matter jurisdiction for interstate custody disputes is governed by the UCCJEA, N.D.C.C. ch. 14-14.1, enacted in North Dakota in 1999, and the Parental Kidnaping Prevention Act (“PKPA”), 28 U.S.C. § 1738A.  
Harshberger v. Harshberger
, 2006 ND 245, ¶ 12, 724 N.W.2d 148.  The UCCJEA was drafted by the National Conference of Commissioners on Uniform State Laws, and one of its stated purposes is to “[a]void jurisdictional competition and conflicts with courts of other States in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being.”  UCCJEA § 101 Comment, 9 U.L.A. 657 (Part 1A 1999).  Subject matter jurisdiction is the court’s power to hear and decide the general subject involved in the action.  
Albrecht v. Metro Area Ambulance
, 1998 ND 132, ¶ 10, 580 N.W.2d 583.  Subject matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject matter jurisdiction can be raised by the court at any time.  
Trottier v. Bird
, 2001 ND 177, ¶¶ 5-6, 635 N.W.2d 157; UCCJEA § 201, Comment, at 673 (“since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective”).

[¶15] The UCCJEA establishes a priority for home state jurisdiction and generally provides for exclusive, continuing jurisdiction in the state issuing the initial child custody determination.  
Benson v. Benson
, 2003 ND 131, ¶ 7, 667 N.W.2d 582; David Carl Minneman, Annot., 
Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act
, 100 A.L.R.5th 1, § 2[b] (2002). In 
Benson
, at ¶ 8, this Court outlined a multi-step process for courts to follow in interstate custody disputes to determine whether to exercise jurisdiction under the UCCJEA and the PKPA:

First, a court must determine whether it has jurisdiction, and, if it finds that it does, it then must determine whether there is a custody proceeding pending or a decree made by another state which has jurisdiction.  If there is a pending custody proceeding in another state, a court must follow the process in N.D.C.C. § 14-14.1-17 and PKPA § 1738A(g).  A court may not modify a decree issued by another state, except as provided in N.D.C.C. § 14-14.1-14 and PKPA §§ 1738A(f) and (h).  Finally, assuming there is neither a proceeding pending in another state nor a decree by which another state retains jurisdiction, the court may decline to exercise jurisdiction under N.D.C.C. § 14-

14.1-18 on the basis of an inconvenient forum, and the court shall decline to exercise its jurisdiction under the provisions of N.D.C.C. § 14-14.1-19 if a person seeking to invoke the court’s jurisdiction has engaged in unjustifiable conduct.

[¶16] The UCCJEA contemplates judicial cooperation as one of the methods for eliminating simultaneous custody proceedings, and the UCCJEA provides mechanisms for courts to cooperate with each other. 
See
 Kelly Gaines Stoner, 
The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)
, 75 N.D. L. Rev. 301, 307-09 (1999); UCCJEA § 112, Comment, at 669.  The role of judicial communications is underscored by N.D.C.C. § 14-14.1-09(1), which provides “[a] court of this state may communicate with a court in another state concerning a proceeding arising under this chapter.”  Although communication between courts is generally discretionary, it is required in certain situations. 
See
 N.D.C.C. § 14-14.1-

15(4) (court “shall immediately communicate with the other court” in situations involving temporary emergency jurisdiction); N.D.C.C. § 14-14.1-17(2) (“If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state.”); N.D.C.C. § 14-14.1-27 (if a proceeding for enforcement is begun in this state and “the court determines that a proceeding to modify the determination is pending in a court of another state having jurisdiction to modify the determination . . . , the enforcing court shall immediately communicate with the modifying court”); 
see also
 UCCJEA § 110, Comment, at 667.

[¶17] Section 14-14.1-12, N.D.C.C., establishes the procedure for deciding subject matter jurisdiction to make an initial child custody determination under the UCCJEA:

1. Except as otherwise provided in section 14-14.1-15 [Temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

b. A court of another state does not have jurisdiction under subdivision a, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 14-14.1-18 [Inconvenient forum] or 14-14.1-19 [Jurisdiction declined by reason of conduct], and:

(1) The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence;  and

(2) Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;

c. All courts having jurisdiction under subdivision a or b have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 14-14.1-18 or 14-14.1-19; or

d. No court of any other state would have jurisdiction under the criteria specified in subdivision a, b, or c.

2. Subsection 1 is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

3. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

[¶18] Under the UCCJEA, the Standing Rock Sioux Indian Reservation is a state.  N.D.C.C. § 14-14.1-03(2).  
See
 
Foote
, 2010 ND 136, ¶ 12, 785 N.W.2d 235 (“Fort Berthold Indian Reservation is a state under the UCCJEA”).  “‘Home state’ means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.”  N.D.C.C. § 14-14.1-01(6).  The home state determination is made at commencement of a child custody proceeding, which means the filing of the first pleading in the proceeding.  N.D.C.C. § 14-14.1-01(4) and (6).  A “‘child custody determination’ means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child . . . includ[ing] a permanent, temporary, initial, and modification order,” and a “‘[c]hild custody proceeding’ means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue.”  N.D.C.C. § 14-14.1-01(2) and (3).  An “‘initial determination’ means the first child custody determination concerning a particular child.”  N.D.C.C. § 14-14.1-01(7).

[¶19] The district court found the Standing Rock Sioux Indian Reservation was the child’s “home state” when the state court child custody proceeding was begun, and the parties agree the Standing Rock Sioux Indian Reservation is the child’s “home state.”  The issue here is whether a court of the home state has declined jurisdiction under N.D.C.C. § 14-14.1-12(1)(b) on the ground that North Dakota is the more appropriate forum under N.D.C.C. § 14-14.1-18 (Inconvenient forum), or under N.D.C.C. § 14-14.1-19 (Jurisdiction declined by reason of conduct) and there is a significant connection with North Dakota and substantial evidence about the child is available in North Dakota.

[¶20] After this Court remanded the proceeding to the state court in 
Kelly
, 2009 ND 20, ¶ 24, 759 N.W.2d 721, the Standing Rock Sioux Tribal Court dismissed Karol Kelly’s tribal court divorce action with prejudice on April 8, 2009.  The state court judge thereafter wrote a May 14, 2009, letter to the tribal court judge with copies to counsel for the parties in which the state court judge recognized the tribal court action had been dismissed with prejudice and said the state court would exercise its jurisdiction to resolve the case.  In May 2009, the state court issued interim custody and visitation orders.  The record does not reflect the state court was then informed of any pending appeal of the tribal court dismissal with prejudice, and at that time, the operative tribal court decision was the dismissal with prejudice, which terminated the tribal court action.  
See
 
Hilzendager v. Skwarok
, 335 N.W.2d 768, 775 (N.D. 1983) (dismissal of an action with prejudice terminates the action).  This record does not reflect the parties provided any other information about tribal court proceedings to the state court during that time frame.  
See
 N.D.C.C. § 14-14.1-20(4) (“Each party has a continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding.”).  On the face of that record, the state court issued an interim child custody determination in May 2009, which constituted the first or initial child custody determination under the plain language of N.D.C.C. § 14-14.1-

01(2) that a child custody determination includes a “permanent, temporary, initial, and modification order” for “legal custody, physical custody, or visitation with respect to a child.”  In the face of an existing Standing Rock Sioux Tribal Court decision explicitly dismissing the tribal court action with prejudice, we conclude the state court did not err in effectively treating the dismissal with prejudice as a declination of jurisdiction by the tribal court and in making an initial “temporary” child custody determination that was consistent with N.D.C.C. § 14-14.1-12(1)(b).  Because the state court’s initial custody determination was consistent with N.D.C.C. § 14-14.1-12(1)(b), the state court thereafter had exclusive continuing jurisdiction over child custody until:

a. A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training, and personal relationships; or

b. A court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in this state.

N.D.C.C. § 14-14.1-13(1).

[¶21] We conclude the state court did not err in applying the UCCJEA when it issued an initial child custody determination in May 2009 and thereafter retained exclusive continuing jurisdiction over child custody subject to the provisions of N.D.C.C. § 14-14.1-13(1)(a) and (b).  We therefore hold the state court had subject matter jurisdiction to decide the child custody issue.

 

III

[¶22] Karol Kelly argues the district court erred in restraining her from contacting Kelly Insurance clients or carriers for five years.  She contends a divorce court does not have jurisdiction to restrain an individual’s chosen profession.  She argues the injunction violates public policy as an invalid restraint on her livelihood and the district court erred in incorporating into this case for five years a temporary restraining order issued in another state district court case brought by Kelly Insurance against her.  Richard Kelly responds the district court had discretion to restrain Karol Kelly from interfering with the operation of Kelly Insurance in the context of her economic misconduct and the distribution of marital property, including Kelly Insurance, in this divorce action.

[¶23] A district court has a wide range of discretion under N.D.C.C. § 14-05-24 to equitably distribute marital property in a divorce action.  
Volk v. Volk
, 376 N.W.2d 16, 18 (N.D. 1985).  Thus, we have recognized a divorce court has authority to order the partition of property.  
Volk v. Volk
, 404 N.W.2d 495, 499 (N.D. 1987).  A divorce court may designate terms for payment of a sum representing one spouse’s share of a business that is subject to distribution.  
Heley v. Heley
, 506 N.W.2d 715, 718 (N.D. 1993).  A district court has authority under N.D.C.C. § 14-05-24(2) to redistribute marital property if one party fails to comply with the terms of an initial court order distributing property and debts.  
Waldie v. Waldie
, 2008 ND 97, ¶ 13, 748 N.W.2d 683.  A district court also may appoint a receiver, trustee, or conservator to sell property and wind up a marriage dissolution.  
Rummel v. Rummel
, 265 N.W.2d 230, 235-36 (N.D. 1978).  Those authorities recognize that a district court adjudicating a divorce action has authority necessary to render a property distribution effective.

[¶24] Other courts have recognized that a divorce court may restrain one party from interfering with a business distributed in a divorce action to protect the goodwill of the business.  
See
 
Fischer v. Fischer
, 834 P.2d 270, 272 (Col. Ct. App. 1992); 
Lord v. Lord
, 454 A.2d 830, 834-35 (Me. 1983); 
Holland v. Holland
, 2001 WY 113, ¶¶ 10-

20, 35 P.3d 409.

[¶25] In 
Lord
, 454 A.2d at 834, the Maine Supreme Judicial Court said a trial court had authority in a divorce action to order a non-competition agreement when necessary for an effective distribution of property, but said non-competition agreements were contrary to public policy and would be enforced only to the extent they were reasonable and were no broader than necessary to protect the business interests at issue.  In 
Lord
 at 832, the court distributed an insurance agency and imposed a covenant requiring one spouse “‘not to engage, either directly or indirectly on her own or in the employ of another, in the insurance business in any form for a period of seven (7) years within a radius of 60 miles of the Town of Machias.’”  The court decided the scope of the non-competition agreement ordered in that case was too broad and remanded to determine the scope of any restraint necessary to protect the value of the distributed asset:

The restrictions imposed by the non-competition agreement are severe. Plaintiff would be totally precluded from her employment as a licensed insurance agent for seven years within a 60 mile radius of Machias. The only evidence which supports the rationality of such a severe restriction is the fact that similar terms were imposed when the parties “bought out” three agencies in the Machias area.  The fact that such terms were acceptable in a voluntary sale does not establish that they are reasonably necessary to preservation of the value of good will.  The record does not reveal whether the value determined for good will is premised solely upon renewal income from the customer pool or whether it includes a measure of value for sources of new business within the market area.  There is a critical need for specificity in this regard since the validity of any restraint will depend upon the need for protecting the value of the asset.  The record in this case does not provide an adequate basis to support the imposition of the restrictions ordered.

Lord
, at 835.

[¶26] In 
Holland
, 2001 WY 113, ¶¶ 3, 7, 10-20, 35 P.3d 409, the Wyoming Supreme Court considered whether a requirement that a husband not compete in a family dry cleaning business for his lifetime was unenforceable as a matter of law. The court held the lifetime covenant not to compete was not unreasonable under the circumstances of that case, including the husband’s stated purpose of driving the wife out of business through direct competition and his financial means to do so.  
Id.
 at ¶ 20.

[¶27] In 
Fischer
, 834 P.2d at 272-73, the Colorado Court of Appeals concluded a trial court had authority in a dissolution action to use a covenant not to compete to protect the goodwill of a business awarded to one party, provided the covenant was not otherwise precluded by a Colorado statutory provision regarding covenants not to compete.  
See
 Colo. Rev. Stat. § 8-2-113(2) (2010).  The court explained the transfer of a business interest to one spouse as part of a divorce court’s distribution of property was analogous to a sale of a business under the provisions of the statute authorizing covenants not to compete.  
Fischer
, at 273.

[¶28] Section 9-08-06, N.D.C.C., deals with contracts for restraint of business in North Dakota and provides:

Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void, except:

1. One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part of either, so long as the buyer or any person deriving title to the goodwill from the buyer carries on a like business therein.

2. Partners, upon or in anticipation of a dissolution of the partnership, may agree that all or any number of them will not carry on a similar business within the same city where the partnership business has been transacted, or within a specified part thereof.

[¶29] We have recognized that contractual covenants not to compete represent an application of public policy and may or may not be valid under the parameters of N.D.C.C. § 9-08-06.  
See
 
Warner & Co. v. Solberg
, 2001 ND 156, ¶¶ 11-20, 634 N.W.2d 65; 
Earthworks, Inc. v. Sehn
, 553 N.W.2d 490, 493-94 (N.D. 1996); 
Lire, Inc. v. Bob’s Pizza Inn Rests., Inc.
, 541 N.W.2d 432, 435 n.2 (N.D. 1995).  We have said N.D.C.C. § 9-08-06 prohibits an excessive restraint on a person’s exercise of a lawful profession, trade, or business as an employer as well as an employee.  
Spectrum Emergency Care, Inc. v. St. Joseph’s Hosp. & Health Ctr.
, 479 N.W.2d 848, 852-53 (N.D. 1992).  One of the exceptions in N.D.C.C. § 9-08-06 authorizes a restraint on competition with the sale of a business and its goodwill.  
Earthworks
, at 493.

[¶30] Here, the district court awarded Kelly Insurance to Richard Kelly after finding the agency had a value of $340,000, including goodwill.  The court also found that Karol Kelly actively solicited insurance business from Indian tribes for her company, Great Plains Tribal Insurance, in direct competition with Kelly Insurance and that her unauthorized deposits of some renewals into accounts for Great Plains constituted economic misconduct.  The district court restrained Karol Kelly from interfering in any way with the operation of Kelly Insurance for five years under the terms of a temporary restraining order issued in a pending state court action by Kelly Insurance against Karol Kelly.  The court’s decision was explicitly tied to the goodwill of Kelly Insurance, a business awarded to Richard Kelly under the divorce judgment.

[¶31] We conclude the district court had authority to restrain Karol Kelly’s interference with Kelly Insurance to protect the goodwill of the company under the circumstances in this case.  Although the provisions for contractual restraints on a business in N.D.C.C. § 9-08-06(1) are not directly applicable to property distributions in a divorce decree, we conclude public policy and legal consistency warrant the district court exercising its authority to distribute marital property in conformity with limitations imposed on contracting parties in N.D.C.C. § 9-08-06.  
See
 
Fischer
, 834 P.2d at 272-73.  The court restrained Karol Kelly from interfering with the operation of Kelly Insurance for five years.  Evidence in this record supports the court’s findings and decision.  The court’s order, however, does not include the geographic limitations of N.D.C.C. § 9-08-06(1), and we remand for application of the limitations of that statute to the restraining order.

 

IV

[¶32] Karol Kelly argues the district court erred in awarding Richard Kelly $40,000 in attorney fees as a sanction payable within 90 days of the judgment.  She argues the state court did not have jurisdiction to award Richard Kelly attorney fees for her actions in tribal court and there was no evidence to establish the amount of attorney fees expended by Richard Kelly in state court.  She also asserts the court erred in requiring her to pay the money within 90 days of the judgment.  Richard Kelly responds he incurred a total of $72,539 in attorney fees, and the state court did not abuse its discretion in awarding him $40,000 in attorney fees payable within 90 days of the judgment.

[¶33] The district court awarded Richard Kelly a $40,000 “cash payment,” finding Karol Kelly’s actions in tribal court substantially increased the amount of attorney fees incurred by Richard Kelly in finally obtaining a divorce, and concluding:

Due to Karol’s willful behavior in failing to cooperate with the Tribal Court divorce proceedings, which resulted in the ultimate dismissal of the Tribal Court Action and it’s [sic] subsequent appeal, and which behavior on the part of Karol served no useful or legitimate purpose other than to increase the amount of legal fees and expenses incurred by Richard, the Court awards Richard a cash payment due from Karol in the amount of $40,000, payable within 90 days of the date of Judgment in this action.

[¶34] Under N.D.C.C. § 14-05-23, the primary standard governing an award of attorney fees in a divorce action is one spouse’s needs and the other spouse’s ability to pay.  
Oldham v. Oldham
, 2004 ND 62, ¶ 16, 677 N.W.2d 196.  Under that statute, we have recognized that where a party’s actions have unreasonably increased the time spent on a case, attorney fees may be appropriate.  
Entzie v. Entzie
, 2010 ND 194, ¶ 32, 789 N.W.2d 550; 
Dronen v. Dronen
, 2009 ND 70, ¶ 50, 764 N.W.2d 675, 
Eberhardt v. Eberhardt
, 2003 ND 199, ¶ 20, 672 N.W.2d 659; 
Reiser v. Reiser
, 2001 ND 6, ¶ 15, 621 N.W.2d 348; 
Kautzman v. Kautzman
, 1998 ND 192, ¶ 32, 585 N.W.2d 561; 
Foreng v. Foreng
, 509 N.W.2d 38, 41 (N.D. 1993).

[¶35] A district court also has inherent authority to sanction a litigant for misconduct.  
Entzie
, 2010 ND 194, ¶ 32, 789 N.W.2d 550; 
Dronen v. Dronen
, 2009 ND 70, ¶ 51, 764 N.W.2d 675.  “‘Sanctions must be reasonably proportionate to the misconduct.’”  
Dronen
, at ¶ 52 (quoting 
Dethloff v. Dethloff
, 1998 ND 45, ¶ 16, 574 N.W2d 867).  When sanctioning a party for misconduct, a district court should consider and make findings on the culpability or state of mind of the party against whom sanctions are being imposed, the prejudice to the moving party, the impact of the prejudice on the moving party’s ability to present or defend the party’s case, and the availability of less severe sanctions.  
Entzie
, at ¶ 32; 
Dronen
, at ¶ 52; 
Dethloff
, at ¶ 16.

[¶36] A district court has discretion in awarding attorney fees as a sanction in divorce actions.  
Dronen
, 2009 ND 70, ¶ 51, 764 N.W.2d 675.  An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion.  
Id.
  A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.  
Martinson v. Martinson
, 2010 ND 110, ¶ 15, 783 N.W.2d 633.

[¶37] The district court’s award of a “cash payment due from Karol [Kelly] in the amount of $40,000” is not explicitly denominated as attorney fees, nor was the cash payment explicitly tied to the cost of attorney fees solely for proceedings in tribal court.  
See
 
Martinson
, 2010 ND 110, ¶¶ 14-29, 783 N.W.2d 633 (recognizing North Dakota court may award a party attorney fees incurred in emergency custody proceedings in another state).  The court’s findings reflect a cash payment as a sanction for an increased amount of legal fees and expenses incurred by Richard Kelly in finally obtaining a divorce.  Competent evidence in this record supports the district court’s finding that Karol Kelly’s willful actions in tribal court and in state court substantially increased the amount of legal fees and expenses incurred by Richard Kelly.  The court’s findings are sufficient to adequately explain the basis of the award as a sanction for litigation misconduct.  We conclude the court did not act arbitrarily, unreasonably, or unconscionably in awarding Richard Kelly $40,000, as a sanction payable within 90 days of the judgment.  We therefore conclude the court did not abuse its discretion.

 

V

[¶38] We affirm the judgment but remand for application of the geographical limitations of N.D.C.C. § 9-08-06(1) to the restraining order.

[¶39] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Benny A. Graff, S.J.

Gerald W. VandeWalle, C.J.

[¶40] The Honorable Benny A. Graff, S.J., sitting in place of Kapsner, J., disqualified.